## No. 25-5036

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

DANIEL A. HORWITZ,

*Plaintiff-Appellant,*

v.

U.S. DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, *ET AL.*,

*Defendants-Appellees.*

---

*On Appeal from the United States District Court for the Middle District of Tennessee, No. 3:24-cv-1180*

---

### PLAINTIFF-APPELLANT'S
### MOTION FOR EMERGENCY INJUNCTIVE RELIEF

---

Jared McClain
Benjamin A. Field
INSTITUTE FOR JUSTICE
901 N. Glebe Rd., Ste. 900
Arlington, Virginia 22203
(703) 682-9320
jmcclain@ij.org
bfield@ij.org

*Counsel for Plaintiff-Appellant*

Appellant Daniel Horwitz respectfully asks this Court for emergency injunctive relief from Middle District of Tennessee Local Rule 83.04(a)(2) during this appeal.

\* \* \*

Mr. Horwitz is a civil-rights lawyer who sues the government and talks about his cases publicly so that people understand how their governments are falling short and know when to demand better. But the Middle District of Tennessee's trial-publicity rule—unique among courts in this Circuit,[1] if not the nation—presumptively bans lawyers from making out-of-court statements about almost anything having to do with their cases. The district court has enforced this rule against Mr. Horwitz already, requiring him, under threat of contempt, to delete troves of his social-media posts and to stop publicizing his cases against CoreCivic of Tennessee, a government contractor who operates prisons for the State. Mr. Horwitz has tried challenging Rule 83.04(a)(2) in six different cases, including the action below against the Middle District's judges. But despite the deeply rooted First Amendment principles at stake, he's been unable to obtain relief.

Now, Mr. Horwitz has a pending interview request from CBS News to discuss his cases against CoreCivic. He needs emergency injunctive relief to participate in that interview without fear of another enforcement proceeding at which his speech is presumed unlawful. Each day that Mr. Horwitz must decline

---

[1] TRO Br., R.30-1, PageID # 183; Examples of Trial-Publicity Rules, R.30-5.

that request is an irreparable injury.  Accordingly, he asks this Court to enjoin the Judicial Defendants from enforcing Rule 83.04(a)(2)'s unconstitutional features so that he can talk to CBS News without the district court presuming his speech is sanctionable.  And because Mr. Horwitz continues to receive media requests, he's also filed a separate motion asking this Court to expedite his appeal so he can promptly exercise the same free-speech rights enjoyed by attorneys who practice in other districts.

## SUMMARY

Middle District of Tennessee Local Rule 83.04(a)(2) creates a presumption that anything an attorney says about four broad categories of content related to his cases will materially prejudice proceedings, and it requires him to avoid discussing those subjects unless he affirmatively proves otherwise.  A reasonable attorney cannot be sure what he can freely say about his cases.  If he discusses the evidence in his cases *or* things that *can't* be evidence in his cases, an opposing party can demand his silence based on the rule's presumption of prejudice.  This enforcement mechanism is a powerful tool for government-affiliated parties to silence disfavored speech.  By merely invoking the rule, an opposing party with no evidence of prejudice can once again force Mr. Horwitz to prove his speech is harmless.  That threat chills his speech.

The rule's presumption against free speech and unique burden-shifting violate the First Amendment.  To satisfy strict scrutiny, a party seeking to censor an attorney must put forward real evidence that a comment is substantially

likely to material prejudice proceedings *and* limit relief to the least-restrictive means of avoiding that prejudice. *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075–76 (1991) (substantially-likely-to-materially-prejudice-proceedings test for attorney speech satisfies strict scrutiny because it's "narrowly tailored"); *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993) (party seeking to censor speech "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree"); *United States v. Ford*, 830 F.2d 596, 600 (6th Cir. 1987) (movant must have evidence of a "specific, not general" harm). Because Rule 83.04(a)(2) flips that standard, it can never be applied lawfully. *Ashcroft v. ACLU*, 542 U.S. 656, 660, 666 (2004) (First Amendment "demands" that courts presume speech restrictions are invalid unless the proponent of censorship justifies a restriction).

Mr. Horwitz's First Amendment rights are injured irreparably each day that Rule 83.04's unconstitutional features remain in effect. The Middle District has already enforced Rule 83.04(a)(2) against Mr. Horwitz and threatened him with contempt if he publicizes his litigation again. That threat of further enforcement is exacerbated because CoreCivic, the party that successfully used Rule 83.04 to gag Mr. Horwitz once already, has reiterated that it will rely on Rule 83.04 to silence Mr. Horwitz if he publicizes his cases again. Because Mr. Horwitz has been litigating against CoreCivic in the Middle District perpetually for three years and will continue to the foreseeable future, he can never discuss his cases without fear of another enforcement proceeding at which he bears the

burden of proof, in violation of his First Amendment rights. That is a concrete constitutional injury from which Mr. Horwitz needs urgent injunctive relief.

But for the threat of enforcement under Rule 83.04(a)(2)'s unconstitutional procedures, Mr. Horwitz would accept a pending interview request from CBS News to discuss his litigation against CoreCivic. Horwitz PI Decl., R.22, PageID # 149. He would also use traditional and social media to inform the public about his cases—just like he did until the court enforced the rule to gag him. *Id.* But he's had to severely restrict discussion of his cases under the current threat of enforcement. *Id.*

Accordingly, Mr. Horwitz respectfully asks this Court to grant him emergency relief from Rule 83.04(a)(2)'s unconstitutional burden-shifting and presumption of prejudice so that he can speak to CBS News while the offer's still available.

**RELEVANT FACTS**

### A. Mr. Horwitz Brings Public-Interest Cases in the Middle District

Mr. Horwitz is a constitutional lawyer who brings public-interest cases on issues ranging from free speech to religious liberty to prisoners' rights. Horwitz PI Decl., R.22, PageID # 147. As a public-interest attorney, Mr. Horwitz's ability to explain constitutional issues and why those issues matter is a vital part of his job. *Id.* Media coverage of the important issues he litigates and can help prompt reform. *Id.* at 148. Mr. Horwitz's commentary also vindicates the public's right to know how its government operates contrary to the public's interest. *Id.*

4

Since 2020, Mr. Horwitz has filed at least 10 cases in the Middle District of Tennessee against CoreCivic, a contractor that operates prisons on behalf of Tennessee. *Id.* Two of those are still active, and he will continue to bring more. *Id.* Mr. Horwitz cannot speak publicly about his cases against CoreCivic, however, because Rule 83.04 restricts almost anything an attorney could say about his ongoing litigation. *Id.*

The issue began in the summer of 2022 when Mr. Horwitz filed *Newby v. CoreCivic of Tennessee, LLC*, No. 22-cv-00093, over the murder of Terry Childress at a CoreCivic facility. Mr. Horwitz posted about the case on social media and conducted interviews with reporters. Horwitz PI Decl., R.21-2, PageID # 148–49. The publicity prompted CoreCivic to seek a gag order under Rule 83.04. *Newby*, No. 22-cv-00093, R.46. Since CoreCivic could not show Mr. Horwitz's speech was prejudicial (particularly considering the trial was years away and never likely to occur), CoreCivic merely invoked Rule 83.04(a)(2)'s presumption of prejudice, forcing Mr. Horwitz to prove his speech was harmless. *Id.*

### B. Rule 83.04's Plain Text & the Middle District's Enforcement

Rule 83.04(a)(1) prohibits everyone lawyer who investigates or litigates a matter in the Middle District from making "any extrajudicial statements (other than a quotation from or reference to public records) that the lawyer knows or reasonably should know will be disseminated by public communication and will have substantial likelihood of materially prejudicing an adjudicative matter."

Subsection (a)(2) defines four broad content categories for which the court presumes attorney speech "is more likely than not" to be prejudicial:

    A. Evidence regarding the occurrence or transaction involved in the case;

    B. The character, credibility, or criminal record of a party, witness, or prospective witness;

    C. The performance or results of any examinations or tests or the refusal or failure of a party to submit to an examination or test; or

    D. Information that the lawyer knows or reasonably should know is likely to be inadmissible as evidence at trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial.

Together, the first and fourth categories restrict comments on both evidence in the case *and* things that cannot be evidence. If an attorney speaks publicly about these vague categories of content, subsection (a)(2) places "the burden" on him "to show that the comment did not pose such a threat."

On July 15, 2022, the district court enforced Rule 83.04 to gag Mr. Horwitz's public speech about *Newby* and CoreCivic more broadly. *Newby*, No. 22-cv-00093, R.53 (Frensley, M.J.). Applying the rule's plain text, the court ruled that Mr. Horwitz's public comments "fit squarely within the prohibition on extrajudicial statements[,]" because he made "assertions regarding [CoreCivic] in general and specific to th[e *Newby*] litigation." *Id.* at PageID # 4296. The court relied on the rule's presumption of prejudice because CoreCivic presented no evidence of actual prejudice. *See id.* at 4299. The court also rejected Mr. Horwitz's First Amendment defense, "despite Mr. Horwitz's assertions that

the present case is unlikely to go to trial, and that voir dire can ensure a neutral jury in the event of a trial[.]" *Id.*  The court ordered Mr. Horwitz "to refrain from extrajudicial statements regarding this matter and to delete those over which he has control[.]" *Id.*  It also warned him "that continuing to seek out media attention for this case would place him at risk of being held in contempt of this Court." *Id.*

In compliance with the gag order, Mr. Horwitz deleted dozens of statements about CoreCivic from his social media. Horwitz PI Decl., R. 21-2, PageID # 149. And he has severely limited his public discussion of his cases ever since. *Id.*

### C. Mr. Horwitz Has Tried to Vindicate His Rights Since July 2022

The court's enforcement of Rule 83.04, along with its warning in *Newby*, forced Mr. Horwitz to restrict his speech about *all* his cases against CoreCivic. *Id.* To remedy that, he's tried five times to challenge the constitutionality of Rule 83.04 within his litigation against CoreCivic.  Despite his diligence, though, Mr. Horwitz was unable to obtain a final ruling on the issue.

First, Mr. Horwitz sought a district judge's review of the *Newby* gag order. No. 22-cv-00093, R.59, R.71. But then *Newby* settled while his objection was pending—well in advance of trial, just as Mr. Horwitz's cases against CoreCivic always do.  The court then denied Mr. Horwitz's objections as moot, despite the issue being capable of repetition yet evading review.

By the time the court dismissed *Newby*, Mr. Horwitz had been gagged for nearly five months and had filed another case against CoreCivic in the Middle

District, *Tardy v. CoreCivic of Tennessee LLC*, No. 22-cv-00681.  So, on May 12, 2023, Mr. Horwitz filed a motion challenging Rule 83.04 in *Tardy*.  CoreCivic opposed the motion, arguing that Mr. Horwitz's public commentary constitutes "inadmissible opinion testimony."  No. 22-cv-00681, R.93, PageID # 2915.  The issue remained pending for four months, until the Middle District transferred the case to the Western District.  *Tardy*, No. 22-cv-00681, R.100.  The Western District dismissed Mr. Horwitz's motion as moot because that court does not have a rule prohibiting extrajudicial speech.  *See Tardy*, 23-cv-01202, R.114 (W.D. Tenn.).

Just three weeks after his second motion became moot, Mr. Horwitz began filing similar motions to speak in three more cases.[2]  CoreCivic opposed each attempt.  The only time the Middle District ruled on one of Mr. Horwitz's motions was in *Gordon*, and even then, the court never issued a final order.  *See* No. 23-cv-01195, R.40.  The court in *Gordon* initially held that Rule 83.04 was facially valid and that Mr. Horwitz lacked standing for an as-applied challenge.  *Id.* at PageID # 418.  Citing its general power to "restrict the free expression" of attorneys, the court rejected Mr. Horwitz's challenge without explaining how the rule's presumptions and burden-shifting could satisfy First Amendment scrutiny.  *Id.*  Mr. Horwitz promptly filed a motion for reconsideration.  No. 23-cv-01195, R.43.  And although the court ordered CoreCivic to respond, the motion

---

[2] *Gordon v. CoreCivic of Tenn., LLC*, No. 23-cv-01195, R.31; *Buchard v. CoreCivic of Tenn., LLC*, No. 23-cv-00455, R.16; *Shaw v. CoreCivic of Tenn., LLC*, No. 24-cv-00681, R.8.

remained pending for four months until *Gordon* also settled, mooting yet another motion to speak.

### D. The Proceedings Below

After five unsuccessful attempts to obtain relief within his ongoing cases, Mr. Horwitz reluctantly sued the Judicial Defendants on October 1, 2024, in hopes of finally obtaining relief.  He moved for a preliminary injunction, highlighting the extensive opportunities for public commentary about his litigation he's had to forgo—including press releases, social-media posts, and interviews—rather than risk sanctions or a finding of contempt based on the plain text of Rule 83.04, how the Middle District has applied it, and CoreCivic's eagerness to invoke it.

Before the Judicial Defendants filed their opposition brief, CBS News contacted Mr. Horwitz on Friday, December 13, requesting an interview about Mr. Horwitz's cases against CoreCivic.  *See* Email from CBS News, R.30-4.  These interviews requests have increased since August 20, 2024, when the U.S. Department of Justice opened an investigation into Trousdale Turner, a CoreCivic facility in the Middle District.  Horwitz PI Decl., R. 21-2, PageID # 149.  But Mr. Horwitz cannot participate in these interviews and share his clients' stories, as the First Amendment ensures his right to do, because the district court presumes his speech is sanctionable.  Any interview Mr. Horwitz gives about his cases is likely to touch on the content categories proscribed by Rule 83.04: the evidence in his cases, things that can't be admitted as evidence in his cases, and

the character of CoreCivic and its employees, some of whom could be witnesses. *See* L.R. 83.04(a)(2). Consequently, Mr. Horwitz declined the CBS request pending a TRO (or expedited preliminary injunction) in the district court. Horwitz TRO Decl., R.30-2, PageID # 190–91.

The parties completed briefing on Mr. Horwitz's motions for injunctive relief on January 2. The Judicial Defendants' primary merits argument was that courts have inherent power to restrict attorney speech based on the substantially-likely-to-materially-prejudice-proceedings standard (a standard which Mr. Horwitz does not challenge). *See* TRO Opp., R.33, PageID # 253. They claimed that *Gentile* "did not take issue" with presumptions of prejudice without acknowledging that the opinion approving of the Nevada Bar's presumptions was the dissent. *Id.* at 252; TRO Reply, R.36, PageID # 281.

 On January 14, the district court dismissed the case. Final Judgment, R.39; Opinion, R.38. Although the court held that the Judicial Defendants are not entitled to sovereign immunity,[3] the court ruled *sua sponte* that Mr. Horwitz lacked standing. Opinion, R.38, PageID # 297. In the court's view, Mr. Horwitz cannot obtain relief from Rule 83.04 because he "does not allege an intention to … violate" the rule and there are not "pending motions … that seek to enforce" the rule against him. *Id.* at 298–99. The court also denied his pending motions for injunctive relief. *Id.* at 300.

---

[3] The district court held that the court itself is entitled to sovereign immunity. Mr. Horwitz does not challenge that ruling on appeal.

Mr. Horwitz filed this timely appeal the next day.

## DISCUSSION

## I. Mr. Horwitz Has Standing to Challenge the Rule Restricting His Speech

The trial court's standing ruling misapplied the law. This Court's review is *de novo*. *Murray v. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012).

As an attorney litigating in the Middle District, Mr. Horwitz is "the object of" the rule's requirement that he "more stringently regulate" his speech, so there should be "little question" he has standing. *West Virginia v. EPA*, 597 U.S. 697, 719 (2022); Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 894 (1983) ("[W]hen an individual who is the very *object* of a law's requirement or prohibition seeks to challenge it, he always has standing."). That's especially true when the rule "quite clearly" exposes him to sanctions. *Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967), *abrogated on other grounds recognized in Califano v. Sanders*, 430 U.S. 99 (1977).

Mr. Horwitz's speech has been objectively chilled since the court enforced Rule 83.04 against him and threatened him with contempt if he publicized his case again. He's been trying ever since to vindicate his rights. The only reason there hasn't been another enforcement action is because Mr. Horwitz has self-censored under the threat of enforcement proceedings that, by their nature, violate his rights.

11

It's highly likely that CoreCivic will move to enforce the rule again if Mr. Horwitz starts speaking again. He's still actively litigating against CoreCivic; the company has opposed all his motions to speak; and it has publicly reiterated that Rule 83.04 prohibits him from speaking again. The past enforcement, threat of sanctions for future violations, likelihood of future enforcement, and the Judicial Defendants' refusal to disavow their unconstitutional rule has objectively chilled Mr. Horwitz's speech. *See Boone Cnty. Republican Party v. Wallace*, 116 F.4th 586, 594 (6th Cir. 2024).

Mr. Horwitz has standing because (1) he intends to engage in protected speech; (2) his speech is arguably proscribed by the challenged rule; and (3) he faces a credible threat of enforcement. *Id.*

The First Amendment protects Mr. Horwitz's right to discuss his cases publicly, and Rule 83.04(a)(2) restricts that speech. *King v. Whitmer*, 71 F.4th 511, 520 (6th Cir. 2023) ("[P]arties and their attorneys are free to use litigation 'as a vehicle for effective political expression and association.'" (quoting *In re Primus*, 436 U.S. 412, 431 (1978))). Indeed, the Middle District of Tennessee has held that the type of things Mr. Horwitz wants to say—"assertions regarding [CoreCivic] in general and specific to [his] litigation"—"fits squarely within the prohibition on extrajudicial statements." *Newby*, No. 22-cv-00093, R.53, at 4296.

In gauging the threat of enforcement, this Court considers whether: (1) defendants have enforced the challenged provision; (2) defendants warned

the plaintiff not to engaged in the proscribed conduct; (3) defendants have disavowed enforcement against the plaintiff; and (4) some aspect of the rule makes enforcement easier by, for example, allowing private-party complaints. *Wallace*, 116 F.4th at 594.   Although Mr. Horwitz need not satisfy all four factors, he does so and more.

*History of Enforcement.*   The last time Mr. Horwitz publicized his cases against CoreCivic, the company enforced Rule 83.04, and the court entered a gag order.   The court ruled that even Mr. Horwitz's general statements about CoreCivic "fit[] squarely" into the rule's prohibition.   It cautioned him not to publicize his litigation again because "[t]rials are meant to occur in the courtroom, not the media."   That history of enforcement against Mr. Horwitz "is good evidence that the threat of enforcement is not chimerical."   *Kareem v. Cuyahoga Bd. of Elections*, 95 F.4th 1019, 1025 (6th Cir. 2024).   So is the Middle District's enforcement against others.   *See, e.g.*, *Lawerence v. Nashville*, No. 3:22-cv-00680, R.78, PageID # 1054 (show-cause order under Rule 83.04); *J.H. ex rel. Harris v. Williamson Count.y*, No. 3:14-CV-02356, 2022 WL 2821943, at *3–4 (M.D. Tenn. July 19, 2022) (considering dismissal of the case as a sanction), *R&R adopted*, 2022 WL 3270602 (Aug. 10, 2022).

*Warning.*   When the court gagged Mr. Horwitz, it "warn[ed]" him that seeking media attention for his litigation against CoreCivic "would place him at risk of being held in contempt of this Court."   That warning was directed at the

"specific conduct" in which Mr. Horwitz would like to engage. *Fischer v. Thomas*, 52 F.4th 303, 308 (6th Cir. 2022) (per curiam).

*Refusal to Disavow Enforcement.*     The Judicial Defendants have not disavowed enforcing the rule against Mr. Horwitz despite repeated opportunities. They let Mr. Horwitz remain gagged for five months without considering his constitutional objections in *Newby*. And he's had an affirmative challenge to the rule pending in at least one case for all but three weeks since May 2023 without receiving a final order.



The Judicial Defendants' refusal to disavow was not just through inaction. In *Gordon*, Judge Trauger's initial ruling upheld Rule 83.04 against Mr. Horwitz's facial challenge based on the court's general power to "restrict the free expression" of attorneys. No. 23-cv-01195, R.40, PageID # 418. Then, in this lawsuit, the Judicial Defendants refused to agree to parameters whereby Mr. Horwitz could interview with CBS. They've maintained that there is no constitutional issue with "allocating to the speaker the burden to show" that he

should be allowed to speak.  TRO Op., R.33, PageID # 253–54.  Mr. Horwitz "understandably fear[s]" further enforcement given that the Judicial Defendants "have not only failed to disavow enforcement" but "have also publicly *doubled down*."  *Kareem*, 95 F.4th at 1024.

*Enforcement Mechanism.*  The threat of enforcement is compounded by CoreCivic's ability to enforce Rule 83.04 anytime Mr. Horwitz's speech touches on any of the rule's vague and overly broad categories.  As the Judicial Defendants admitted below, CoreCivic can file an enforcement action over any speech it finds "offensive."  TRO Br., R.33, PageID # 255.  That's how they got the *Newby* gag order in the first place.  CoreCivic has since opposed each of Mr. Horwitz's motions challenging Rule 83.04.  Compl., R.1, PageID # 15.  And in response to this lawsuit, CoreCivic reiterated that its "position regarding the local rules of court involving litigation brought against us has not changed.'"  TRO Br., R.30-1, PageID # 184; *id.* (CoreCivic told Law360 it "stands by Judge Frensley's decision, saying it 'supports our belief that matters of litigation should be decided within the court system and not in the press or social media.'").  CoreCivic's position is that Mr. Horwitz's "repeated public statements about the *Newby* case violated Local Rule 83.04, and allowing him to tweet in a similar fashion about [other] case[s] would do the same."  *Tardy*, No. 22-cv-00681, R.93, PageID # 2913–14.  Allowing opposing parties to file complaints with no evidentiary basis to silence opposing counsel incentivizes frivolous complaints.  *See Fischer*, 52 F.4th at 308–09.

Despite Mr. Horwitz establishing all four *McKay* factors, the district court ruled that Mr. Horwitz's injury was not imminent, seemingly believing the threat of enforcement had dissipated because the Judicial Defendants have not enforced Rule 83.04 against Mr. Horwitz since July 2022.  Opinion, R.38, PageID # 298–99.  But the reason Mr. Horwitz has not faced another gag order is *because* he's self-censored while he tries to vindicate his rights.  The ongoing threat of sanctions in a proceeding that violates Mr. Horwitz's rights makes this case justiciable.  Mr. Horwitz does not need to "confess that he will in fact violate that law," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014), nor expose himself to the risk of an enforcement action, *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 765 (6th Cir. 2019) (going through a legal process is "a real consequence that objectively chills speech").  He has standing to challenge the rule that currently restricts his speech.

## II.    Mr. Horwitz Needs Emergency Injunctive Relief to Discuss His Cases with the Media

Mr. Horwitz has suffered a protracted, irreparable injury as he's tried litigating his First Amendment rights in the court below.  That irreparable harm continues each day Rule 83.04(a)(2) remains in place.

This Court may "grant an injunction pending appeal to prevent irreparable harm to the [moving] party."  *Overstreet v. Lexington-Fayette Urban Cnty.*, 305 F.3d 566, 572 (6th Cir. 2002).  Typically, the Court considers four factors "when deciding whether to grant an injunction pending appeal:" (1) the

appeal's likely success; (2) irreparable harm; (3) possibly injury to other parties; and (4) the public interest. *Wallace*, 116 F.4th at 593.  In a First Amendment case, however, "the outcome generally boils down to … whether plaintiffs have shown a likelihood of success on the merits of their First Amendment claim." *Id.* This Court's review is *de novo*.  *Id.*

Emergency injunctive relief is appropriate because Mr. Horwitz is likely to succeed on his appeal; he's suffering irreparable harm; prohibiting enforcement of an unconstitutional rule will not harm the Judicial Defendants; and the public has an interest in hearing Mr. Horwitz's speech.  There's no risk of harm to anyone because an injunction would still allow the district court to enforce Rule 83.04 if CoreCivic can produce evidence that something Mr. Horwitz says is substantially likely to materially prejudice proceedings.  All the injunction would prohibit is the Judicial Defendant's use of a prior restraint that makes the speaker prove his speech should be allowed.

### A. Mr. Horwitz's Appeal Is Likely to Succeed

The Judicial Defendants cannot show that Rule 83.04 satisfies strict scrutiny.  *See Ashcroft*, 542 U.S. at 660 (burden is on the government to justify a speech restriction).  Strict scrutiny applies because Rule 83.04 is a speaker- and content-based restriction that limits discussion of the important political issues at stake in Mr. Horwitz's lawsuits.  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565–66 (2011); *Citizens United v. FEC*, 558 U.S. 310, 340 (2010); *United States v. Playboy Enter. Grp, Inc.*, 529 U.S. 803, 812 (2000).

Mr. Horwitz is likely to win his appeal because: (1) Rule 83.04(a)(2)'s presumptions of prejudice and unique burden-shifting violate black-letter First Amendment law; (2) the Judicial Defendants' application of the rule does not satisfy strict scrutiny; and (3) the rule is unconstitutionally vague.

1.    The Supreme Court held in *Gentile* that to restrict an attorney's out-of-court speech, strict scrutiny requires evidence that the specific speech at issue "will have a substantial likelihood of materially prejudicing an adjudicative proceeding." 501 U.S. 1030, 1033, 1061 (1991); *id.* at 1075–76 (restriction must be "narrowly tailored" to "the substantial state interest in preventing prejudice to an adjudicative proceeding").

While subsection (a)(1) codifies *Gentile*'s substantial-likelihood-of-material-prejudice standard, subsection (a)(2) inverts First Amendment scrutiny by *presuming* that broad categories of attorney speech will prejudice proceedings. But Supreme Court precedent—both before *Gentile* and since— "*demands*" that courts presume that restrictions on speech are invalid unless the government (or a party asking to censor speech) can prove that its desired gag order is both justified and narrowly tailored. *Ashcroft*, 542 U.S. at 660 (emphasis added). Mr. Horwitz has repeatedly cited a string of 15 Supreme Court cases reaffirming that strict scrutiny requires that the party seeking to restrict speech must bear the burden of proof. *See, e.g.*, PI Brief, R.21-1, PageID # 134–35. The Judicial Defendants' only retort below was that none of those cases explicitly applied that 60-plus years of unbroken precedent to "a speaker in Plaintiff's shoes." TRO

Opp., R.33, PageID # 253–54. But the First Amendment does not allow a speaker in *any* shoes to bear the burden to prove their speech is free.

**2.** Since *Gentile*, the Court has reiterated that strict scrutiny requires that the party seeking to censor speech "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 770–71; *accord 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996) (plurality opinion). The evidence of harm must be a "specific, not general." *Ford*, 830 F.2d at 600.

A court contemplating a gag order must narrowly tailor its restriction by considering "specific … less burdensome alternatives." *Id.*; *see also Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 184 (1968) (requiring the least-restrictive means that fits "the exact needs of the case"). Gag orders must be the last resort. *See Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 564 (1976) ("questioning of prospective jurors … to screen out those with fixed opinions" is preferred alternative to a full-fledged prior restraint); *Ford*, 830 F.2d at 599 (suggesting as alternatives "a change of venue or the sequestration of the jury or a … voir dire examination of the jury"); *Hirschkop v. Snead*, 594 F.2d 356, 373 (4th Cir. 1979) (en banc) (citing *CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975), for a similar proposition); *Karhani v. Meijer*, 270 F. Supp. 2d 926, 934 (E.D. Mich. 2003) ("[P]otential prejudice to the jury pool can be evaluated by vigorous voir dire.").

Rule 83.04 reverses the presumption of free speech and "unfairly shift[s] the burden of proof" to the speaker. *Speiser*, 357 U.S. at 524. Because the rule presumes that certain categories of speech are unconstitutional, the Constitution

19

presumes the rule is unconstitutional. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) ("Content-based regulations are presumptively invalid.").

**3.**     The rule is also unconstitutionally vague.  It's virtually impossible for Mr. Horwitz—a First Amendment lawyer—to guess what level of detail he's allowed to share about the "[e]vidence regarding the occurrence or transaction involved" in his cases before Rule 83.04(a)(2)(A) creates a presumption of prejudice.  He can quote from a public record, but it's unclear how much paraphrasing or editorializing the rule allows.  Similarly, Mr. Horwitz cannot guess which criticisms of CoreCivic could go to the "character" or "credibility" of the prison corporation under subsection (a)(2)(B).  Nor what would fall under subsection (a)(2)(D)'s presumption against sharing "[i]nformation that … is likely to be inadmissible as evidence."  Lots of things Mr. Horwitz has to say about CoreCivic might not be admissible in any given case.  For instance, Mr. Horwitz's opinion of CoreCivic, his description of his past cases, and how the DOJ investigation into Trousdale Turner is relevant to his cases might all be "inadmissible as evidence." The vague text of the rule doesn't produce predictable answers.  So, Mr. Horwitz has to err on the side of silence—the exact injury the vagueness doctrine is meant to prevent, especially in the First Amendment context. *See Grayned v. City of Rockford*, 408 U.S. 104, 109–11 (1972); *Baggett v. Bullitt*, 377 U.S. 360, 372–73 (1964).

## B. The Remaining Factors Also Favor an Injunction

Mr. Horwitz's First Amendment injury satisfies the remaining factors for an injunction.  *Wallace*, 116 F.4th at 593.  Rule 83.04 chills Mr. Horwitz's speech, thereby "exact[ing] an extraordinary cost." *Playboy*, 529 U.S. at 817.

A First Amendment injury, "for even minimal periods of time," is irreparable. *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 408 (6th Cir. 2022). Both the equities and the public interest also support an injunction to alleviate that until this case is resolved. *See G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

## CONCLUSION

This Court should enjoin the Judicial Defendants' enforcement of Rule 83.04(a)(2)'s presumption of prejudice and burden-shifting pending its full consideration of this appeal.

Dated: January 21, 2025                Respectfully submitted,

                                       /s/ Jared McClain
                                       Jared McClain
                                       Benjamin A. Field
                                       INSTITUTE FOR JUSTICE
                                       901 N. Glebe Rd., Ste. 900
                                       Arlington, Virginia 22203
                                       (703)682-9320
                                       jmcclain@ij.org
                                       bfield@ij.org
                                       *Counsel for Daniel A. Horwitz*

## CERTIFICATE OF COMPLIANCE

This motion complies with the font-style requirements of Rule 32(a)(5)–(6) because it was prepared in Charter, a proportionally spaced typeface, and 14-point font.  And it complies with Rule 27(d)(2)(A) because it has 5,037 words.

/s/ Jared McClain
Jared McClain
*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2025, this Motion for Emergency Injunctive Relief was served through the Court's CM/ECF system on counsel for all parties required to be served.

/s/ Jared McClain
Jared McClain
*Counsel for Plaintiff-Appellant*