# No. 25-5036

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DANIEL ALEXANDER HORWITZ,

*Plaintiff-Appellant*,

v.

U.S. DISTRICT COURT FOR THE DISTRICT OF TENNESSEE, NASHVILLE DIVISION; HONORABLE WILLIAM LYNN CAMPBELL, JR., Chief District Judge; HONORABLE ALETA ARTHUR TRAUGER, District Judge; HONORABLE WAVERLY D. CRENSHAW, JR., District Judge; HONORABLE ELI J. RICHARDSON, District Judge, in their official capacities,

*Defendants-Appellees*.

On Appeal from the United States District Court for the
Middle District of Tennessee, No. 3:24-cv-1180

## APPELLANT'S BRIEF

Jared McClain
Benjamin A. Field
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
jmcclain@ij.org
bfield@ij.org

*Counsel for Appellant*

**CORPORATE DISCLOSURE**

Pursuant to 6 Cir. R. 26.1(a), Plaintiff-Appellant is not a subsidiary or affiliate of a publicly owned corporation. There are no publicly owned corporations that have a financial interest in the outcome of this case.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE ............................................................. i

TABLE OF AUTHORITIES ............................................................. iv

STATEMENT REGARDING ORAL ARGUMENT ................................. xi

STATEMENT OF JURISDICTION ................................................... 1

STATEMENT OF ISSUES .............................................................. 1

SUMMARY OF THE ARGUMENT ................................................... 2

STATEMENT OF THE CASE........................................................... 4

    A.    CoreCivic Invoked Rule 83.04 to Silence Mr. Horwitz .......................... 5

    B.    Rule 83.04's Unconstitutional Structure & Application ...................... 6

    C.    Mr. Horwitz Has Been Litigating His First Amendment Rights Since the District Court Gagged Him ................................ 10

    D.    Mr. Horwitz Sued the Judicial Defendants To Resolve His Right To Speak About His Cases ................................ 13

    E.    Mr. Horwitz Filed This Appeal To Finally Vindicate His Rights ........... 15

ARGUMENT ............................................................................. 16

    I.    Mr. Horwitz Has Standing to Challenge Rule 83.04 ....................... 17

        A.    The Supreme Court's Precedent Makes Clear that Mr. Horwitz Has Standing ............................................. 19

            1.    The First Amendment Protects Mr. Horwitz's Speech ........................................................ 20

2. Rule 83.04 Proscribes Almost Everything Mr. Horwitz Wants to Say About His Cases ...................................... 20

3. Mr. Horwitz Faces a Substantial Threat of Enforcement ............................................................. 22

B. Sixth Circuit Precedent Confirms that Mr. Horwitz Faces a Credible Threat of Enforcement ................................................ 26

1. Mr. Horwitz Satisfies All Four *McKay* Factors & More ..................................................................... 27

2. This Court's Precedent Confirms that Mr. Horwitz Has Standing ................................................................ 31

II. This Court Should Enjoin Rule 83.04's Unconstitutional Features to Finally Allow Mr. Horwitz to Speak Freely ................... 35

A. This Court Is Empowered to Enjoin Restrictions on Free Speech ............................................................... 36

B. Mr. Horwitz Is Likely to Succeed on the Merits ......................... 37

1. Rule 83.04 Is Subject To & Fails Strict Scrutiny ............. 38

a. Rule 83.04(a)(2) Is Facially Unconstitutional ......... 42

b. The Middle District's Application of Rule 83.04 Violates the First Amendment ................................. 45

2. Rule 83.04 Is Also Void for Vagueness .......................... 50

CONCLUSION ............................................................. 53

CERTIFICATE OF COMPLIANCE ................................................. 54

CERTIFICATE OF SERVICE .................................................... 55

ADDENDUM ................................................................................... 56

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*303 Creative LLC v. Elenis,*
  600 U.S. 570 (2023) ........................................................... 25

*44 Liquormart, Inc. v. Rhode Island,*
  517 U.S. 484 (1996) ........................................................... 45

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967) ........................................................... 17

*Ashcroft v. ACLU,*
  542 U.S. 656 (2004).......................................................37, 43

*Babbitt v. United Farm Workers,*
  442 U.S. 301 (1979) ............................................. 20, 24, 26

*Baggett v. Bullitt,*
  377 U.S. 360 (1964) .......................................................51, 53

*Bates v. City of Little Rock,*
  361 U.S. 516 (1960) ........................................................... 44

*Bays v. City of Fairborn,*
  668 F.3d 814 (6th Cir. 2012) .......................................36, 37

*Bd. of Trs. of State Univ. of N.Y. v. Fox,*
  492 U.S. 469 (1989) ........................................................... 43

*Bolger v. Youngs Drug Prods. Corp.,*
  463 U.S. 60 (1983) ............................................................. 43

*Burchard v. CoreCivic of Tenn., LLC,*
  No. 23-cv-00455 (M.D. Tenn. 2023) ..............................11, 13

*Califano v. Sanders,*
  430 U.S. 99 (1977)............................................................. 17

*Carroll v. President & Comm'rs of Princess Anne,*
393 U.S. 175 (1968) .................................................. 39, 45, 49

*CBS Inc. v. Young,*
522 F.2d 234 (6th Cir. 1975) ................................... 47, 49, 51

*Chi. Council of Laws. v. Bauer,*
522 F.2d 242 (7th Cir. 1975) ....................................... 40, 52

*Christian Healthcare Ctrs., Inc. v. Nessel,*
117 F.4th 826 (6th Cir. 2024) ............................................ 18

*Citizens United v. FEC,*
558 U.S. 310 (2010) .............................................. 38, 39, 43

*City of Boerne v. Flores,*
521 U.S. 507 (1997) .......................................................... 39

*Consol. Rail Corp. v. Yashinsky,*
170 F.3d 591 (6th Cir. 1999) ............................................. 9

*Craig v. Harney,*
331 U.S. 367 (1947) .......................................................... 40

*Edenfield v. Fane,*
507 U.S. 761 (1993) ..................................................... 45, 46

*Elrod v. Burns,*
427 U.S. 347 (1976) .......................................................... 43

*FDA v. All. for Hippocratic Med.,*
602 U.S. 367 (2024) .......................................................... 19

*FEC v. Cruz,*
596 U.S. 289 (2022) .......................................................... 43

*Fischer v. Thomas,*
52 F.4th 303 (6th Cir. 2022) ........................ 27, 31, 33, 34, 36

*Fla. Bar v. Went for It, Inc.,*
515 U.S. 618 (1995) .......................................................... 38

*Freedman v. Maryland,*
 380 U.S. 51 (1965) .............................................................. 44

*Friedmann v. Corr. Corp. of Am.,*
 310 S.W.3d 366 (Tenn. Ct. App. 2009) ................................. 38

*FW/PBS, Inc. v. City of Dallas,*
 493 U.S. 215 (1990) .......................................................... 44

*Garrison v. Louisiana,*
 379 U.S. 64 (1964) ........................................................... 38

*Gentile v. State Bar of Nev.,*
 501 U.S. 1030 (1991) ............................... 40, 41, 42, 49, 51

*Gordon v. CoreCivic of Tenn., LLC,*
 No. 23-cv-01195 (M.D. Tenn. 2023) ................... 11, 12, 13, 29

*Grayned v. City of Rockford,*
 408 U.S. 104 (1972) ....................................................... 50, 51

*Greater New Orleans Broad. Ass'n, Inc. v. United States,*
 527 U.S. 173 (1999) .......................................................... 43

*Holder v. Humanitarian Law Project,*
 561 U.S. 1 (2010) .................................................... 24, 25, 26

*Hirschkop v. Snead,*
 594 F.2d 356 (4th Cir. 1979) ............................. 40, 50, 51–52

*In re Primus,*
 436 U.S. 412 (1978) .......................................................... 20

*J.H. ex rel. Harris v. Williamson County,*
 No. 3:14-CV-02356, 2022 WL 2821943
 (M.D. Tenn. July 19, 2022).............................................. 9, 28

*Kareem v. Cuyahoga Cnty. Bd. of Elections,*
 95 F.4th 1019 (6th Cir. 2024) ....................... 26, 27, 28, 32, 33

*Karhani v. Meijer,*
    270 F. Supp. 2d 926 (E.D. Mich. 2003) .................................................50

*King v. Whitmer,*
    71 F.4th 511 (6th Cir. 2023) .................................................................20

*Landmark Commc'ns, Inc. v. Virginia,*
    435 U.S. 829 (1978) .............................................................................38

*Lawrence v. Metro. Gov't of Nashville & Davidson Cnty.,*
    No. 3:22-cv-00680 (M.D. Tenn. 2022) ...............................................28

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) .............................................................................17

*McKay v. Federspiel,*
    823 F.3d 862 (6th Cir. 2016) ............................................ 18, 27, 31, 33

*McCullen v. Coakley,*
    573 U.S. 464 (2014). ......................................................................39, 46

*McCutcheon v. FEC,*
    572 U.S. 185 (2014) .............................................................................43

*NAACP v. Button,*
    371 U.S. 415 (1963) ...............................................................................2

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra,*
    585 U.S. 755 (2018) .............................................................................43

*Neb. Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) .............................................................................50

*Newby v. CoreCivic of Tenn., LLC,*
    No. 22-cv-0093 (M.D. Tenn. 2022) ...............................................*passim*

*Pennekamp v. Florida,*
    328 U.S. 331 (1946) ........................................................................20, 40

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) .............................................................................44

*Reno v. ACLU,*
    521 U.S. 844 (1997) ............................................................... 43

*Sable Commc'ns of Cal., Inc. v. FCC,*
    492 U.S. 115 (1989) ............................................................... 39

*Shaw v. CoreCivic of Tenn., LLC,*
    No. 24-cv-0681 (M.D. Tenn. 2024) .................................. 12, 13

*Shelton v. Tucker,*
    364 U.S. 479 (1960) ............................................................... 39

*Sisters for Life, Inc. v. Louisville-Jefferson County,*
    56 F.4th 400 (6th Cir. 2022) .............................................. 36

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011) ......................................................... 38, 39

*Speech First, Inc. v. Schlissel,*
    939 F.3d. 756 (6th Cir. 2019) ................................... 32, 33, 34

*Speiser v. Randall,*
    357 U.S. 513 (1958) ......................................................... 44, 49

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ................................................. 23, 24, 26

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ............................. 18, 19, 21–26, 31, 34

*Susan B. Anthony List v. Driehaus,*
    525 F. App'x 415 (6th Cir. 2013) ....................................... 21

*Tardy v. CoreCivic of Tenn., LLC,*
    No. 22-cv-00681 (M.D. Tenn. 2022) ........................ 11, 13, 30

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
    393 U.S. 503 (1969) ............................................................... 44

*United States v. Alvarez,*
    567 U.S. 709 (2012) ............................................................... 43

*United States v. Ford,*
    830 F.2d 596 (6th Cir. 1987) ................................................. 46, 48, 49, 50

*United States v. Playboy Ent. Grp., Inc.,*
    529 U.S. 803 (2000) .................................................... 38, 39, 43–45, 49

*United States v. Wilgus,*
    638 F.3d 1274 (10th Cir. 2011) ........................................................ 44

*Virginia v. Am. Booksellers Ass'n, Inc.,*
    484 U.S. 383 (1988) ............................................................ 17, 25, 26

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976) ........................................................................ 38

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ........................................................................ 17

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ............................................................................ 37

*Wood v. Georgia,*
    370 U.S. 375 (1962) ........................................................................ 38

*Williams-Yulee v. Fla. Bar,*
    575 U.S. 433 (2015) ........................................................................ 39

S<span>TATUTES</span>

28 U.S.C. § 1331 ................................................................................ 1

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. § 1292(a)(1) .................................................................. 1, 36

R<span>ULES</span>

American Bar Association, Model Rule 3.6 .................................... 40

M. D. Tenn. R. 83.04 ................................................................. *passim*

M. D. Tenn. R. 83.04(a)(1) ......................................................... 6, 42

M. D. Tenn. R. 83.04(a)(2) ...............................................................*passim*

M. D. Tenn. R. 83.04(a)(2)(A) ............................................ 7, 14, 20, 49, 52

M. D. Tenn. R. 83.04(a)(2)(B) ............................................................. 14, 20

M. D. Tenn. R. 83.04(a)(2)(D) ................................................. 7, 14, 20, 52

## OTHER AUTHORITIES

Antonin Scalia,
*The Doctrine of Standing as an Essential Element of the Separation of Powers*,
17 Suffolk U. L. Rev. 881 (1983)...........................................................17

Arthur R. Miller,
*Confidentiality, Protective Orders, and Public Access to the Courts*,
105 Harv. L. Rev. 427 (1991) ..................................................................4

Brandon Lowrey,
*Battle Over Atty Speech Raises First Amendment Concerns*, Law360
(Dec. 16, 2024),
*available at* https://bit.ly/3DlUKmF.......................................................30

Diego A. Zambrano,
*Discovery as Regulation*,
119 Mich. L. Rev. 71 (2020) ....................................................................4

Joanna C. Schwartz,
*Introspection Through Litigation*,
90 Notre Dame L. Rev. 1055 (2015)........................................................4

## STATEMENT REGARDING ORAL ARGUMENT

This Court should hold oral argument in this case because it involves important questions about when First Amendment claims are justiciable and how much the First Amendment protects attorneys' out-of-court speech.

Specifically, Mr. Horwitz asks whether attorneys have standing to challenge speech restrictions in the local rules of courts where they practice. The district court has applied the rule at issue to gag Mr. Horwitz's speech in recent years and warned him not to talk about his cases again. Nevertheless, the court still held that Mr. Horwitz lacks standing to bring a First Amendment challenge. The Judicial Defendants' position is that attorneys can only ever challenge an unconstitutional local rule when they are defending themselves against that rule's enforcement. That position, part of which the district court adopted, would have widespread consequences.

On the merits, this case concerns the judiciary's authority to restrict attorneys' out-of-court speech. The Judicial Defendants have adopted a speech restriction that presumes an attorney's speech is prejudicial and, thus, subject to sanctions. It's up to the attorney to prove their speech is harmless. Whether the First Amendment countenances such a rule is a question of broad importance.

Oral argument will help the Court resolve these important issues.

## STATEMENT OF JURISDICTION

The district court had federal-question jurisdiction pursuant to 28 U.S.C. § 1331. On January 14, 2025, the district court held that Mr. Horwitz lacked standing, denied his motion for a preliminary injunction, and dismissed the case. R.38, PageID # 291–300. The court entered final judgment that same day, R.39, PageID # 301, and Mr. Horwitz filed his timely appeal on January 15, 2025. R.40, PageID # 302. This Cout has jurisdiction pursuant to 28 U.S.C. §§ 1291, 1292(a)(1).

## STATEMENT OF ISSUES

**I.** Whether Mr. Horwitz has standing to bring a First Amendment challenge to a rule that currently governs his speech and has already been enforced against him when he's publicized his litigation in the same way he would like to now.

**II.** Whether Mr. Horwitz is entitled to injunctive relief from the Judicial Defendants' rule that presumes his speech is sanctionable and forces him to prove otherwise.

## SUMMARY OF THE ARGUMENT

America has a proud history of attorneys speaking out when the government betrays the public's interest. Using litigation to expose government malfeasance, shape public opinion, and inspire structural change is "a form of political expression." *NAACP v. Button*, 371 U.S. 415, 429–30 (1963). To be effective, however, public-interest litigation requires public discussion. That's why Daniel Horwitz publicizes his cases in the same tradition as the civil-rights attorneys who came before him. He discusses his cases publicly to highlight the government's failings and empower the citizenry to demand better. Or at least he used to—until the Middle District of Tennessee enforced its trial-publicity rule to silence him.

A private-prison company that Mr. Horwitz sues routinely invoked a unique feature of the Middle District's rule that presumes an attorney's speech about his cases is prejudicial. Without any evidence that Mr. Horwitz's comments would impact a trial that was still 18 months away, the court imposed a gag order that forbade Mr. Horwitz from disseminating "any public communication" about his case, ordered him to delete his public statements about the prison, and threatened him with contempt if he publicized his cases again.

Mr. Horwitz has been trying ever since to vindicate his right to speak. Since July 2022, however, the Middle District has not ruled on any of his six First Amendment challenges nor disavowed future enforcement of its unconstitutional rule. After five unsuccessful attempts to challenge the rule within his ongoing cases languished for a combined 614 days, Mr. Horwitz took the extraordinary

2

step of suing the judges in his home district to vindicate his rights along with those of other attorneys who practice in central Tennessee. He moved for injunctive relief so that he could go on national television to talk about his cases. But the district court denied Mr. Horwitz's motions because it ruled *sua sponte* that he lacks standing to challenge the local rule that currently restricts his speech.

Article III does not require Mr. Horwitz to risk further enforcement before he can vindicate his rights—especially when there is no way the Judicial Defendants can apply their trial-publicity rule consistently with the First Amendment. Middle District of Tennessee Rule 83.04 creates a presumption that almost anything Mr. Horwitz says about his cases is materially prejudicial, and it forces Mr. Horwitz to prove otherwise. The parties that Mr. Horwitz sues do not even need to put forward any evidence that Mr. Horwitz said anything harmful. So, if Mr. Horwitz talks about his cases against the private-prison company again, the prison faces no barrier to initiate enforcement proceedings at which Mr. Horwitz must prove his speech is harmless or face sanctions.

The Middle District's trial-publicity rule—and the court's past enforcement of its rule—chills Mr. Horwitz's legitimate speech. The First Amendment requires courts to presume that speech is free, even when it's an attorney talking. Rule 83.04 does just the opposite. Mr. Horwitz does not need to endure further enforcement of a rule that violates the First Amendment before he can challenge the fact that the rule violates the First Amendment.

This Court should reverse the district court's decision and remand with instructions for the district court to enjoin the Judicial Defendants' enforcement of the unconstitutional features of Rule 83.04.

## STATEMENT OF THE CASE

Daniel Horwitz is a constitutional lawyer who brings public-interest cases against the government and its contractors on issues ranging from free speech to prisoners' rights.  PI Decl., R.21-2, PageID # 147.  As a public-interest attorney, Mr. Horwitz's advocacy is not limited to the courtroom.  *Id.*  His ability to explain constitutional issues to the public, and why those issues matter, is an important part of his job.[1]  *Id.*  Generating media coverage for his cases brings public attention to the important interests he litigates and can help prompt governmental reform that would help his clients and people similarly situated.  *Id.* at 148.  Mr. Horwitz's commentary also vindicates the public's right to know how its government operates and the ways the government and its contractors fail to work in the public's interest.  *Id.*

---

[1] *See* Joanna C. Schwartz, *Introspection Through Litigation*, 90 Notre Dame L. Rev. 1055, 1057 & n.7, 1073 (2015) (detailing how "lawsuits can unearth information about misconduct that organizations have hidden from regulators and the public at large"); *see also* Diego A. Zambrano, *Discovery as Regulation*, 119 Mich. L. Rev. 71, 146 n.337 (2020) (same); Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 431 (1991) ("[P]ublic access to information produced in litigation has always been a secondary benefit—a side effect—of civil adjudication.").

Based in Nashville, Mr. Horwitz has litigated dozens of cases in the Middle District of Tennessee. *Id.* At least 10 of those cases since 2020 have been against CoreCivic of Tennessee, LLC—a private contractor that operates prisons on behalf of the state. *Id.* Mr. Horwitz will continue to bring more cases in the Middle District against CoreCivic, as he continues to hear from potential clients who say CoreCivic violated their civil rights. *Id.* If not for the district court's unconstitutional rule, and its past enforcement of that rule against Mr. Horwitz, he would publicize his cases in the media and on his own social-media accounts to inform the public about constitutional violations at prisons run in their name. Compl., R.1, PageID # 22–26.

### A.    CoreCivic Invoked Rule 83.04 to Silence Mr. Horwitz

Middle District Tennessee Local Rule 83.04 has drastically restricted how Mr. Horwitz discusses his cases against CoreCivic. PI Decl., R.21-2, PageID # 149–50. Mr. Horwitz used to send press releases about his cases, give print interviews, go on television, and post about his litigation (and its targets) on social media. Compl., R.1, PageID # 21–26.

That all changed in the summer of 2022 during discovery in *Newby v. CoreCivic of Tennessee*, TNMD No. 22-cv-0093, a lawsuit over the murder of Terry Childress in a CoreCivic facility. Compl., R.1, PageID # 5–7. After Mr. Horwitz filed *Newby*, he informed the public about his case like he always has before: He posted about it on social media and did interviews with television and print news outlets. *Id.* Then, on June 10, 2022, CoreCivic filed a "Motion for Compliance with Local Rule 83.04 and to Strike," asking the court to impose

a gag order on Mr. Horwitz and to order him to delete his public comments about the case. *Newby*, Enforcement Mot., R.46. CoreCivic asserted that any publicity about Mr. Childress' death and the general conditions in CoreCivic facilities would inherently prejudice CoreCivic's right to a fair trial. *Id.* at 4164, 4167, 4175, 4178–81. CoreCivic did not, however, offer any proof that Mr. Horwitz's discussion of his case was prejudicial—something it could not do considering the trial was 18 months away and never likely to happen. *See id.* Instead, CoreCivic merely relied on Rule 83.04(a)(2), which creates a *presumption* of prejudice when an attorney tells the public about his cases and places the burden on the attorney to prove that his speech is *not* prejudicial. *Id.* at 4179.

**B.    Rule 83.04's Unconstitutional Structure & Application**

Rule 83.04(a)(1) provides that any lawyers who investigate or litigate a matter in the Middle District "must not make any extrajudicial statements (other than a quotation from or reference to public records) that the lawyer knows or reasonably should know will be disseminated by public communications and will have substantial likelihood of materially prejudicing an adjudicative matter, including especially that will interfere with a fair trial." Subsection 83.04(a)(2) then defines four broad categories of content for which the court presumes that an attorney's public speech "is more likely than not" to be materially prejudicial:

A. Evidence regarding the occurrence or transaction involved in the case;

B. The character, credibility, or criminal record of a party, witness, or prospective witness;

C. The performance or results of any examinations or tests or the refusal or failure of a party to submit to an examination or test; or

D. Information that the lawyer knows or reasonably should know is likely to be inadmissible at trial or that would, if disclosed, create a substantial risk of prejudicing an impartial trial.

Together, the first and fourth categories restrict an attorney from talking about both things that might be evidence in the case *and* things that cannot be evidence in the case. If an attorney speaks publicly about any of these broad categories of content, the rule places "the burden [] upon the person commenting upon such matters to show that the comment did not pose such a threat." Rule 83.04(a)(2).

On July 15, 2022, the court granted CoreCivic's motion to enforce Rule 83.04. *Newby*, Gag Order, R.53. Magistrate Judge Frensley ruled that Mr. Horwitz's comments about his case "fit squarely within the prohibition on extrajudicial statements[,]" because he made "assertions regarding [CoreCivic] in general and specific to th[e *Newby*] litigation." *Id.* at 4296. Specifically, Magistrate Frensley ruled that Mr. Horwitz's comments "clearly" fell within subsections 83.04(a)(2)(A) and (D) as "evidence regarding the occurrence or transaction" and "information that the lawyer[] knows or reasonably should know is likely to be inadmissible as evidence at trial[.]" *Id.* at 4297.

7

Based solely on Rule 83.04(a)(2)'s presumptions—without any evidence of prejudice whatsoever—the court concluded that "Mr. Horwitz's comments have a substantial likelihood of materially prejudicing an adjudicative proceeding in this matter, especially interfering with a fair trial." *Id.* at 4299. In doing so, the court summarily rejected Mr. Horwitz's First Amendment defense, "despite Mr. Horwitz's assertions that the present case is unlikely to go to trial, and that voir dire can ensure a neutral jury in the event of a trial[.]" *Id.*

Accordingly, the court ordered Mr. Horwitz "to refrain from extrajudicial statements regarding this matter and to delete those over which he has control[.]" *Id.* at 4299. Specifically, Mr. Horwitz had to "remove all public communications … , including social media posts" and was forbidden from "disseminat[ing] any public communication" about his case, "including commentary on this lawsuit or matters at issue in this lawsuit." *Id.* at 4301.

The order also explicitly "warn[ed] Mr. Horwitz" that "continuing to seek out media attention for this case would place him at risk of being held in contempt of this Court." *Id.* at 4299. Mr. Horwitz's responsibility, the court cautioned, "is to be an advocate, not an investigative journalist." *Id.* "Trials are meant to occur in the courtroom, not the media," the decision admonished as it criticized Mr. Horwitz for "actively seeking media attention for his client's case." *Id.* at 4297.

The *Newby* gag order and its threat of contempt chilled Mr. Horwitz's speech. Mr. Horwitz deleted dozens, if not hundreds, of public comments about

CoreCivic—spanning years—from his social-media accounts. PI Decl., R.21-2, PageID # 149. He also severely restricted his speech because contempt is coercive. The court could force Mr. Horwitz to pay fines or deprive him of his liberty if he violates the rule again.[2] Future violations could also expose his clients to sanctions, including the dismissal of their case.[3] Consequently, Mr. Horwitz has severely limited his public comments about CoreCivic generally and stopped talking about his specific cases almost entirely. *Id.* at 149–50.

Mr. Horwitz used to talk to the media about his cases regularly. Now, he must turn down interview requests and significantly restrict his public commentary and social-media posts about his cases. Compl., R.1, PageID # 22–26. But for his legitimate fear of further enforcement under Rule 83.04, Mr. Horwitz would resume publicizing his litigation against CoreCivic to inform the public about the systemic failures that have injured his clients' civil rights. *Id.* at 21–25. His complaint even details many of the specific things he wants to say. *Id.* at 24–35. If not for Rule 83.04, Mr. Horwitz would go on television and say those things, and he would resume publicizing his cases just like he did before the *Newby* gag order demanded his silence on pain of contempt. TRO Decl., R.30-2, PageID # 190.

C.  **Mr. Horwitz Has Been Litigating His First Amendment Rights Since the District Court Gagged Him**

---

[2] *E.g.*, *Consol. Rail Corp. v. Yashinsky*, 170 F.3d 591, 596 (6th Cir. 1999).
[3] *E.g.*, *J.H. ex rel. Harris v. Williamson County*, No. 3:14-CV-02356, 2022 WL 2821943, at *3–4 (M.D. Tenn. July 19, 2022), *R&R adopted*, 2022 WL 3270602 (M.D. Tenn. Aug. 10, 2022).

Mr. Horwitz has diligently sought to vindicate his First Amendment rights since the court entered the *Newby* gag order. He immediately filed an objection to Magistrate Frensley's order with the district court. Compl., R.1, PageID # 12. Once *Newby* settled, he filed a third-party motion on his own behalf to challenge the constitutionality of Rule 83.04. *Id.* at 13. As Mr. Horwitz explained, he regularly litigates against CoreCivic in the Middle District and those cases always settle, making the issue both capable of repetition and likely to evade review. *Id.* But the district court dismissed both motions as moot in December 2022. *Id.* By that point, Mr. Horwitz had already been gagged for five months. The court's mootness decision provided him no further clarity on whether he could exercise his First Amendment rights consistently with Rule 83.04's restrictions on his speech.

The district court's interpretation of Rule 83.04 in *Newby*, and its failure to disavow further enforcement, made Mr. Horwitz restrict his speech about *all* his cases against CoreCivic. PI Decl., R.21-2, PageID # 149. To vindicate his right to speak without violating the court's rule—thereby subjecting himself and his clients to sanctions—Mr. Horwitz began filing motions in his ongoing cases challenging the constitutionality of Rule 83.04.

Between May 2023 and July 2024, he filed motions in four different cases. The first was in *Tardy v. CoreCivic of Tennessee*, TNMD No. 22-cv-00681. CoreCivic opposed the motion, arguing that Mr. Horwitz's public commentary about the case constitutes "inadmissible opinion testimony" under Rule 83.04. *Tardy*, Opp. to Speech, R.93, PageID# 2915. The motion remained pending for

over four months, until September 26, 2023, when the Middle District transferred the case to the Western District of Tennessee. *Tardy*, Transfer Order, R.100. The Western District dismissed as moot Mr. Horwitz's motion to speak because that court (like every other district in this Circuit) has no rule like Rule 83.04. *Tardy*, TNWD No. 23-cv-1202, R.114; *see* Examples of Trial-Publicity Rules, R.30-5.

Because Mr. Horwitz's speech remained chilled, he continued filing motions to speak in his other cases. He tried next in *Burchard v. CoreCivic of Tennessee*, TNMD No. 23-cv-00455, R.16. That district court, however, did not rule on the motion. After six months of waiting, Mr. Horwitz filed a motion to ascertain the status of his pending motion to vindicate his First Amendment rights. *Burchard*, Mot. to Ascertain, R.24. Three weeks later, court responded that it would issue a ruling in "due course." *Burchard*, Order, R.27, PageID # 358–59. But it never did. After 10 months with no ruling, *Burchard* eventually settled, too, once again mooting Mr. Horwitz's First Amendment challenges. *Burchard*, Dismissal, R.46.

Mr. Horwitz tried again in *Gordon v. CoreCivic of Tennessee*, TNMD No. 23-cv-1195, Mot. to Speak, R.31. Again, CoreCivic opposed Mr. Horwitz's right to speak. Opp. to Speech, R.33. The court in *Gordon* moved quickly at first—denying Mr. Horwitz's motion before he even filed his reply brief. *Gordon*, Order, R.40. The ruling was two-fold. *First*, the court rejected Mr. Horwitz's facial challenge, holding that Rule 83.04 is within the court's general power to "restrict the free expression" of attorneys. *Id.* at 418. *Second*, the court held it

had "no basis" to consider Mr. Horwitz's as-applied challenge because the court had not yet applied Rule 83.04 "in this case." *Id.* Mr. Horwitz promptly sought reconsideration based on the errors in the court's First Amendment and justiciability analyses. *Gordon*, R.43. Although the court called for and received a response from CoreCivic, *Gordon*, Call for Response, R.44, it never ruled on Mr. Horwitz's reconsideration motion. The motion remained pending more than three months until *Gordon* also settled, once again mooting one of Mr. Horwitz's motions to speak. R.48.

Mr. Horwitz tried again in *Shaw v. CoreCivic of Tennessee*, TNMD No. 24-cv-0681. He filed a motion to speak on July 10, 2024, which CoreCivic opposed once again. *Shaw*, Mot. to Speak, R.8; Opp. to Speech, R.11. Like the prior motions, Mr. Horwitz's motion in *Shaw* also sat on the docket. After 212 days without a ruling on Mr. Horwitz's right to speak, the district court eventually transferred *Shaw* to the Western District on February 7, 2025. *Shaw*, Transfer Order, R.29.

Over two years, Mr. Horwitz filed at least 11 briefs asking the Judicial Defendants to rule on whether Rule 83.04(a)(2) is constitutional:

- An objection to the *Newby* Gag Order;
- A third-party challenge to the *Newby* Gag Order;
- A memorandum of law and reply brief in *Tardy*;
- A memorandum of law, reply brief, and motion to ascertain in *Burchard*;
- A memorandum of law and motion for reconsideration in *Gordon*;

- A memorandum of law and reply brief in *Shaw*.

By the fall of 2024—more than two years after being gagged—it was clear there was no pathway for Mr. Horwitz's to vindicate his First Amendment rights within his clients' lawsuits against CoreCivic.

### D. Mr. Horwitz Sued the Judicial Defendants To Resolve His Right To Speak About His Cases

On September 30, Mr. Horwitz sued the Middle District of Tennessee's district judges for injunctive and declaratory relief. Compl., R.1. He took this extraordinary step after trying in vain to obtain a final ruling on the unconstitutional ways in which Rule 83.04(a)(2) restricts his out-of-court speech. Mr. Horwitz's lawsuit stated three claims: (1) the rule's presumptions of prejudice and burden-shifting provisions are facially unconstitutional; (2) the district court's application of the rule does not satisfy strict scrutiny; and (3) the rule is void for vagueness because the broad categories of prejudicial speech are impermissibly blurry.

Mr. Horwitz also filed a motion to preliminary enjoin the enforcement of Rule 83.04(a)(2). PI Br., R.21-1. He explained that, given the rule's plain text of, how the district court has applied it, and CoreCivic's eagerness to invoke it, he's been forced to forgo extensive opportunities for public commentary about his litigation—including press releases, social-media posts, and interviews with the press—rather than risk sanctions or a finding of contempt. *Id.* at 127–29. Specifically, the rule's unconstitutional presumption of prejudice and burden-shifting provision, and its overly broad and vague categories of content

restrictions, are chilling Mr. Horwitz's legitimate speech about his cases against CoreCivic.

Six weeks later, while Mr. Horwitz was still waiting for the government's response, his constitutional injury intensified. CBS News contacted Mr. Horwitz on Friday, December 13, requesting an interview about his litigation against CoreCivic. Interview Request, R.30-4. Mr. Horwitz would have immediately agreed to participate in that interview to share his clients' stories, as the First Amendment ensures his right to do. *See* TRO Decl., R.30-2, PageID # 189–90. But he could not safely do so because any interview he gives about CoreCivic is likely to touch on the categories of content proscribed by Rule 83.04(a)(2): namely, the evidence in his cases, things that could not be admitted as evidence in his cases, and the character and credibility of CoreCivic and its employees, some of whom could be witnesses in Mr. Horwitz's cases. *See* Rule 83.04(a)(2)(A), (B), (D). Consequently, Mr. Horwitz had to decline participating in the interview until he obtained injunctive relief. TRO Decl., R.30-2, PageID # 190–91.

To remedy that acute harm, Mr. Horwitz filed a motion for a temporary restraining order and expedited consideration of his pending motion for a preliminary injunction. R.30. The Judicial Defendants' response did not justify how Rule 83.04 could satisfy First Amendment scrutiny. R.33, PageID # 253. Instead, the Judicial Defendants (ironically) tried to shift their burden to Mr. Horwitz and merely asserted that the Supreme Court has allowed "for greater

regulation of the speech of lawyers" and had never addressed the exact "kind of burden" that Rule 83.04 imposes. *Id.*

On January 14, 2025, the district court issued its ruling. Final Judgment, R.39; Opinion, R.38. The court began by holding that the Judicial Defendants were not immune to suits for injunctive relief. Opinion, R.38, PageID # 297. But the court then held, *sua sponte*, that Mr. Horwitz lacked standing to challenge Rule 83.04. In the district court's view, Mr. Horwitz cannot obtain relief from Rule 83.04 because he "does not allege an intention to … violate" the rule and there are no "pending motions … that seek to enforce" the rule against him. *Id.* at 298–99. The court reasoned that it had been "almost three years" since the *Newby* gag order and that any harm "occurred in the past." *Id.* at 299. Having found that Mr. Horwitz lacked standing, the court denied his two pending motions for injunctive relief. *Id.* at 300.

### E. Mr. Horwitz Filed This Appeal To Finally Vindicate His Rights

Mr. Horwitz filed his notice of appeal the next day. Notice of Appeal, R.40. He also filed motions to expedite the appeal and for emergency injunctive relief pending appeal to ensure that he could go on national television to talk about his cases without fear of another enforcement action. This Court granted the motion to expedite in part on February 14, 2025, and denied the injunction pending appeal on March 24, 2025.

### ARGUMENT

Mr. Horwitz faces sanctions if he talks publicly about his cases again. We know that because the district court threatened him with sanctions if he talks

about his cases again.  A district court's threat of contempt would chill any reasonable attorney.  Mr. Horwitz does not have to expose himself and his clients to sanctions before he can challenge a rule that is currently restricting his speech.  That's especially true when the rule—on its face—creates an unconstitutional presumption that his speech is prejudicial.

Mr. Horwitz has been trying to get the Judicial Defendants to disavow enforcement of Rule 83.04(a)(2) since the *Newby* gag order in July 2022.  The rule's presumptions of prejudice and burden-shifting are facially unconstitutional.  And the way the Judicial Defendants apply the rule does not satisfy First Amendment scrutiny.  Nor could it.  The rule is vague, overbroad, and fails strict scrutiny.

Mr. Horwitz has standing to assert his First Amendment rights, and Rule 83.04(a)(2) is unconstitutional.  The Judicial Defendants' unconstitutional rule has silenced Mr. Horwitz for long enough.  This Court should reverse the district court's standing decision and denial of injunctive relief, and remand with instructions for the district court to enter a preliminary injunction promptly.

## I.    Mr. Horwitz Has Standing to Challenge Rule 83.04

As an attorney litigating in the Middle District, Mr. Horwitz has standing to challenge a local rule that proscribes his speech.  The standing inquiry is straightforward: Mr. Horwitz is "the object of" Rule 83.04's requirement that he "more stringently regulate" his speech, so there should be "little question" he has standing.  *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (citing *Lujan v. Defs.*

*of Wildlife*, 504 U.S. 555, 561–62 (1992)); Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 894 (1983) ("[W]hen an individual who is the very *object* of a law's requirement or prohibition seeks to challenge it, he always has standing."). Standing is especially certain when, as here, the rule "quite clearly" exposes Mr. Horwitz to sanctions. *Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967), *abrogated on other grounds recognized in Califano v. Sanders*, 430 U.S. 99 (1977). When "the law is aimed directly at" the plaintiff, and the challenged rule causes him to either take compliance measures or risk sanctions, the threat of enforcement is sufficient. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (citations omitted).

These basic principles are enough to decide this case. Mr. Horwitz litigates almost continuously in the Middle District of Tennessee against a party that has already enforced the challenged rule against him and maintains that the rule should prohibit all of his public speech. During the last enforcement action, the district court threatened to hold Mr. Horwitz in contempt if he continued to "seek out media attention for his case" or act like an "investigative journalist." *Newby*, Gag Order, R.53*, PageID # 4299.

Mr. Horwitz has heeded that warning at great cost to his constitutional rights. He has forgone countless media requests to comment on his cases, he has withheld hundreds of social-media posts, he has stopped issuing press releases on his cases, and he has turned down an interview on national television. Compl., R.1, PageID # 22–26; TRO Decl., R.30-2, PageID # 190. This censorship was

necessary because both he and his clients could be sanctioned if he resumes doing media on his cases. An injunction against the unconstitutional features of Rule 83.04(a)(2) would remove that threat.

The district court, however, denied injunctive relief because it misapplied settled standing law. The court reasoned that Mr. Horwitz could not challenge Rule 83.04 because there was no active enforcement action against him and because he self-censored rather than pledging to break the rule. Neither point diminishes Mr. Horwitz's injury. This Court reviews the district court's standing determination without deference. *Christian Healthcare Ctrs., Inc. v. Nessel*, 117 F.4th 826, 842 (6th Cir. 2024).

This section will first explain that the Supreme Court has already decided that plaintiffs who face a similar threat of enforcement have standing to challenge laws that restrict their speech. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162–63 (2014) ("*SBA List*"). Next, Mr. Horwitz will walk through the factors this Court uses to evaluate pre-enforcement challenges. *See McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016). These decisions all lead to the same conclusion: Mr. Horwitz does not have the subject himself and his clients to sanctions before he can vindicate his First Amendment rights.

## A. The Supreme Court's Precedent Makes Clear that Mr. Horwitz Has Standing

To establish standing, a plaintiff must show: "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."

*SBA List*, 573 U.S. at 157–58 (cleaned up).  A plaintiff subject to a government restriction that requires or forbids certain conduct "almost invariably satisf[ies] both the injury in fact and causation requirements.  So in those cases, standing is usually easy to establish."  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024) (citing *SBA List*, 573 U.S. at 162–63).

That's true here.  Rule 83.04's overbroad and vague categories of prejudicial speech, combined with its burden-shifting provision, force Mr. Horwitz to restrict what he says about his cases.  The chill on his speech is an injury that would be redressed by an injunction that prevents the Judicial Defendants from applying Rule 83.04(a)(2)'s unconstitutional features.  *See SBA List*, 573 U.S. at 158.

As detailed in *SBA List*, people like Mr. Horwitz do not need to risk enforcement before they can seek an injunction.  A First Amendment plaintiff has standing for pre-enforcement relief if: (1) they intend to engage in protected speech; (2) their speech is arguably proscribed by the challenged rule; and (3) they face a credible threat of enforcement.  *Id.* at 160 (citing *Babbitt v. United Farm Workers*, 484 U.S. 289, 298 (1979)).

### 1.   The First Amendment Protects Mr. Horwitz's Speech

The first inquiry is easy.  The First Amendment protects Mr. Horwitz's right to discuss his cases publicly, and Rule 83.04(a)(2) restricts his right to have that discussion.  *King v. Whitmer*, 71 F.4th 511, 520 (6th Cir. 2023) ("[P]arties and their attorneys are free to use litigation 'as a vehicle for effective political expression and association[.]'" (quoting *In re Primus*, 436 U.S. 412, 431

(1978))).  Mr. Horwitz's public speech about his litigation is—at *the very least*— "arguably affected with a constitutional interest." *Babbitt*, 484 U.S. at 298; *see also Pennekamp v. Florida*, 328 U.S. 331, 347 (1946) (explaining that, "[i]n the borderline instances," public commentary on trials should prevail over the possibility that it will "influence pending cases").

> ### 2. Rule 83.04 Proscribes Almost Everything Mr. Horwitz Wants to Say About His Cases

The things Mr. Horwitz intends to say about his cases are restricted by Rule 83.04(a)(2).  The rule presumes prejudice anytime he talks about the evidence, things that could not be admitted as evidence, or the opposing party.  Rule 83.04(a)(2)(A), (B), (D).  As the Middle District has already ruled, the things Mr. Horwitz would say—"assertions regarding [CoreCivic] in general and specific to [his] litigation"—"fit *squarely* within the prohibition on extrajudicial statements" in Rule 83.04(a)(2).  *Newby*, Gag Order, R.53, PageID # 4296 (emphasis added).

Despite this neat fit, the district court ruled that Mr. Horwitz lacked standing because he "does not even allege that he plans to violate Local Rule 83.04(a)(2)."  R.38 at PageID # 298–99.  But even though Mr. Horwitz does not plan to prejudice proceedings, he *does* want to talk about the categories proscribed by the rule.  Just as in *SBA List*, the district court's focus on whether the speech will ultimately violate the rule "misses the point."  *See* 573 U.S. at 163.  The point, instead, is whether the "intended future conduct is arguably proscribed."  *Id.* at 162 (cleaned up).

SBA List, for example, intended to engage in truthful speech about political candidates who voted for the Affordable Care Act. So this Court held that—given the statements' truthfulness—the threat of prosecution was "exceedingly slim" because the challenged law prohibited only false statements. *Id.* at 163 (quoting 525 F. App'x 415, 422 (6th Cir. 2013)). Reversing this Court's decision, the Supreme Court emphasized that truthfulness may not stop the government from finding probable cause that the statements were illegal. *Id.* This risk of enforcement over truthful statements was evidenced by past enforcement proceedings over SBA List's truthful statements. *Id.* That past enforcement led the Court to conclude that "there [wa]s every reason to think that similar speech in the future w[ould] result in similar proceedings, notwithstanding SBA's belief in the truth of its allegations." *Id.* Standing does not "require[] a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Id.*

That's true here. Just as SBA List could challenge a ban on false statements while alleging that it would make only truthful ones, Mr. Horwitz can challenge Rule 83.04(a)(2)'s presumption of prejudice without alleging his speech will be prejudicial. Rule 83.04(a)(2) is written so broadly that nearly everything Mr. Horwitz wants to say about his cases is "arguably proscribed" by the rule. *See SBA List*, 573 U.S. at 163. Specifically, Mr. Horwitz would share what he knows about the civil-rights abuses in CoreCivic's facilities, and he would detail the facts of his current and past cases—even if some of it, including his opinions, might not be admissible as evidence. Compl. R.1, PageID # 22–26. Based on

21

*Newby*, there's "every reason to think" that Mr. Horwitz would face another enforcement action over his intended speech. *See SBA List*, 573 U.S. at 163. CoreCivic can institute proceedings without *any* evidence of prejudice, and the district court can sanction Mr. Horwitz without any. Mr. Horwitz's ultimate belief that his speech is non-prejudicial does not inoculate him from enforcement. Indeed, it does not even ensure he will prevail in an enforcement action since he bears the burden of proof.

### 3. Mr. Horwitz Faces a Substantial Threat of Enforcement

Finally, Mr. Horwitz faces a substantial threat of further enforcement if he publicizes his cases again. The district court found the threat insubstantial, though, because the Judicial Defendants have not enforced the rule against him in the two years he's been self-censoring as he litigates his First Amendment rights. R.38 at PageID # 298. The court reasoned that Mr. Horwitz could not bring a pre-enforcement challenge because he "does not allege that there are any pending motions in his current cases before the Middle District of Tennessee that seek to enforce the Local Rule 83.04(a)(2)[.]" *Id.* In other words, the district court treated an active enforcement action as a prerequisite to a pre-enforcement challenge. That reasoning, of course, erases the very idea of pre-enforcement challenges. The Supreme Court has been clear that Article III does not force speakers to violate the law and raise the First Amendment as a defense in the subsequent enforcement action. That's especially true when a court has already told the plaintiff—in a nearly identical case—that his intended speech would be in contempt of court.

Again, *SBA List* is directly on point. SBA List brought a pre-enforcement challenge to a law that prohibited certain false statements about political candidates. The Court held that the organization faced a "substantial" threat of future enforcement, enough to easily satisfy the injury-in-fact requirement, for three main reasons. *First*, SBA List was the target of a complaint in a prior election cycle. 573 U.S. at 164. The Court reiterated that "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *Id.* (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). The threat was "even more substantial" because, the last time around, the government had "actually found probable cause to believe that SBA's speech violated the false statement statute." *Id.* *Second*, the threat was "bolstered by the fact" that the law "allow[ed] 'any person' with knowledge of the purported violation to file a complaint," making parties like SBA List, "who intend to criticize candidates for political office, [we]re easy targets." *Id.* *Third*, the Court observed, enforcement actions were "not a rare occurrence" and that the government "ha[d] not disavowed enforcement" if SBA made similar statements again in the future. *Id.* at 164–65. Given these three factors, the Court concluded that "the prospect of future enforcement [wa]s far from imaginary or speculative." *Id.* at 165 (cleaned up).

In reaching this conclusion, *SBA List* relied on four prior cases that also found standing based on the threat of enforcement. The first was *Steffel*, in which the plaintiff wanted to distribute handbills, but the police threatened to prosecute him if he did and had already prosecuted his friend for the same

offense. 415 U.S. at 459. The Court held that he did not need to "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id.*

Similarly, in *Babbitt*, the Court allowed a First Amendment challenge to proceed against a labor law that prohibited "dishonest, untruthful and deceptive publicity." 442 U.S. at 301. Although the plaintiffs did not allege that they planned to lie, they argued that erroneous statements were "inevitable." *Id.* That was enough to make their fear of prosecution more than "imaginary or wholly speculative." *Id.* at 302.

Likewise, in *Holder v. Humanitarian Law Project*, after a law designated certain groups as terrorists, the plaintiff planned to continue providing those groups the same support it had before. 561 U.S. 1, 8, 15 (2010). Because the government had prosecuted *other* people under the law already and refused to disavow enforcement against the plaintiff, the claims were justiciable without the need for the plaintiff to provoke its own prosecution. *Id.* at 15.

And finally, *SBA List* relied on *American Booksellers Association*, 484 U.S. 383. In that case, booksellers brought a pre-enforcement action against a law forbidding the display of sexually explicit material. *Id.* at 386. The Court held the booksellers—who carried at least some explicit books—suffered injury in fact because "the law [wa]s aimed directly at [them]," and, "if their interpretation of the statute is correct," the booksellers would have to either incur significant costs or risk prosecution. *Id.* at 392.

The Supreme Court's decisions since *SBA List* have confirmed that standing in First Amendment cases is not an onerous requirement. In *303 Creative LLC v. Elenis*, for example, a plaintiff satisfied the injury-in-fact requirement by alleging that she would face a credible threat of enforcement under a discrimination law "*if* she enters the wedding website business" and refuses to serve same-sex couples. 600 U.S. 570, 581 (2023) (emphasis added). She did not even have a website yet. By contrast, Mr. Horwitz has filed seven cases against CoreCivic in the Middle District since the *Newby* gag order. *See* Compl., R.1, PageID # 7. And he's had to forgo his normal practice of issuing press releases on those cases and using traditional and social media to share his clients' stories. *Id.* at 22–26. Mr. Horwitz has turned down a nationally televised interview due to the substantial threat of enforcement. TRO Decl., R.30-2, PageID # 190.

Mr. Horwitz does not need to risk further enforcement before he can sue. The first enforcement action is the best evidence that he will face a second. *See Steffel*, 415 U.S. at 459. That threat is increased by the structure of Rule 83.04(a)(2), which makes Mr. Horwitz an "easy target[]." *SBA List*, 573 U.S. at 164. CoreCivic can institute enforcement proceedings without any evidence of prejudice, and the Judicial Defendants have not disavowed further enforcement against Mr. Horwitz. *See SBA List*, 573 U.S. at 164–65; *Holder*, 561 U.S. at 15; *Babbitt*, 442 U.S. at 301–02. The Judicial Defendants' willingness to enforce CoreCivic's evidence-less motions for a gag order has given CoreCivic veto power over Mr. Horwitz's public speech about the political issues

central to his cases against CoreCivic. That is a very real, concrete injury to Mr. Horwitz's First Amendment rights.

## B. Sixth Circuit Precedent Confirms that Mr. Horwitz Faces a Credible Threat of Enforcement

This Court's pre-enforcement precedent also demonstrates how, in First Amendment cases, plaintiffs must be allowed to alleviate the constitutional injury that self-censorship can cause "even without an actual prosecution." *Kareem*, 95 F.4th at 1023 (quoting *Am. Booksellers Ass'n*, 484 U.S. at 393). To implement this principle, this Court has articulated four factors that show when fear of enforcement is reasonably grounded in fact: (1) a history of past enforcement against the plaintiff or others; (2) prior warnings directed at the plaintiff; (3) a feature of the law that makes enforcement more likely, such as a private enforcement mechanism; and (4) the defendants' refusal to disavow future enforcement against the plaintiff. *McKay*, 823 F.3d at 869. The list is non-exhaustive, and a plaintiff need not establish all four. *See Kareem*, 95 F.4th at 1023 ("not exhaustive"); *Fischer v. Thomas*, 52 F.4th 303, 307–08 (6th Cir. 2022) (not a "laundry list").

As Mr. Horwitz will explain, the *McKay* factors show that he has standing, as confirmed by this Court's progeny of pre-enforcement cases.

### 1. Mr. Horwitz Satisfies All Four *McKay* Factors & More

The *McKay* factors help reveal how Mr. Horwitz is injured: (1) the district court has previously enforced Rule 83.04 to impose a gag order on Mr. Horwitz; (2) when doing so, the court threatened Mr. Horwitz with contempt if he

publicized his case against CoreCivic again; (3) CoreCivic's ability to seek enforcement of the rule makes enforcement more likely; and (4) despite more than a half-dozen opportunities to disavow further enforcement of the rule against Mr. Horwitz, the Judicial Defendants have refused. Moreover, the unconstitutional structure of the rule's enforcement—by presuming Mr. Horwitz's speech is prejudicial and placing the burden on him to prove otherwise—further chills his speech.

*History of Enforcement.* The last time Mr. Horwitz publicized his cases against CoreCivic, the company triggered Rule 83.04 enforcement, and the court entered a gag order. The court ruled that even Mr. Horwitz's most general statements about CoreCivic "fit squarely" into the categories of proscribed speech. *Newby*, Gag Order, R.53, PageID # 4296. The court ordered Mr. Horwitz to "remove all public communications" within his control and forbid him from "disseminat[ing] any public communication," "including commentary on this lawsuit or matters at issue in this lawsuit." *Id.* at 4301.

That history of enforcement against Mr. Horwitz "is good evidence that the threat of enforcement is not chimerical." *Kareem*, 95 F.4th at 1023 (citation omitted). So is the Middle District's enforcement of the rule against others. *See, e.g.*, *Lawrence v. Metro. Gov't of Nashville & Davidson Cnty.*, MDTN No. 3:22-cv-00680, R.78, PageID # 1054 (show-cause order under Rule 83.04); *J.H. ex rel. Harris v. Williamson County*, No. 3:14-CV-02356, 2022 WL 2821943, at *3–4 (M.D. Tenn. July 19, 2022) (considering dismissal as a sanction), *R&R adopted*, 2022 WL 3270602 (M.D. Tenn. Aug. 10, 2022).

*Warnings*.  When the court gagged Mr. Horwitz, it "warn[ed]" that seeking media attention for his litigation against CoreCivic "would place him at risk of being held in contempt of this Court." *Newby*, Gag Order, R.53, PageID # 4299. The court cautioned that Mr. Horwitz's responsibility "is to be an advocate, not an investigative journalist," and it warned him against "actively seeking media attention for his client's case." *Id.* at 4298.  That warning covers the exact types of things Mr. Horwitz would like to say about his current cases.

*Refusal to Disavow Enforcement.*  The Judicial Defendants have not disavowed enforcing the rule against Mr. Horwitz despite repeated opportunities. They let Mr. Horwitz remain gagged for five months without considering his constitutional objections in *Newby*.  And he's had an affirmative challenge to the rule pending in at least one case for all but three weeks since May 2023 through February 2025 without the Judicial Defendants issuing a ruling to disavow the rule's enforcement against him.



The Judicial Defendants' refusal to disavow was not merely through their inaction. In *Gordon*, Judge Trauger's initial ruling upheld Rule 83.04 against Mr. Horwitz's facial challenge based on the court's general power to "restrict the free expression" of attorneys. No. 23-cv-01195, R.40, PageID # 418. (She then never ruled on Mr. Horwitz's motion for reconsideration.) Additionally, in response to this lawsuit, the Judicial Defendants refused to even agree to parameters whereby Mr. Horwitz could interview with CBS. They've maintained that the First Amendment does not stop them from "allocating to the speaker the burden to show" that he should be allowed to speak. TRO Opp., R.33, PageID # 253–54.

*Enforcement Mechanism.* The threat of enforcement is compounded by CoreCivic's ability to enforce Rule 83.04 anytime Mr. Horwitz's speech touches on any of the rule's vague and overbroad categories. As the Judicial Defendants acknowledged below, CoreCivic can file an enforcement action over any speech it

finds "offensive." TRO Br., R.33, PageID # 255. That's how CoreCivic got the *Newby* gag order in the first place. CoreCivic has since opposed each of Mr. Horwitz's motions to speak, Compl., R.1, PageID # 15, and reiterated in response to this lawsuit that its "position regarding the local rules of court involving litigation brought against us has not changed.'" TRO Br., R.30-1, PageID # 184. CoreCivic told Law360 that it "stands by Judge Frensley's decision, saying it 'supports our belief that matters of litigation should be decided within the court system and not in the press or social media.'" Brandon Lowrey, *Battle Over Atty Speech Raises First Amendment Concerns*, Law360 (Dec. 16, 2024), *available at* https://bit.ly/3DlUKmF. The company's position is that Mr. Horwitz's "repeated public statements about the *Newby* case violated Local Rule 83.04, and allowing him to tweet in a similar fashion about [other] case[s] would do the same." *Tardy*, TNMD No. 22-cv-0681, R.93, PageID #2913–14. Allowing CoreCivic to seek enforcement of Rule 83.04 solidifies Mr. Horwitz's injury.

### 2. This Court's Precedent Confirms that Mr. Horwitz Has Standing

This Court's past application of the *McKay* factors confirms the outcome here. The plaintiffs in *Fischer*, for example, also satisfied all four factors on a weaker record than this one. That case involved two candidates for judicial office who sought to enjoin rules of the Kentucky Code of Judicial Conduct after a state commission opened an investigation into the candidates. 52 F.4th at 306–07. Ticking through the *McKay* factors, this Court said that both candidates showed a history of past enforcement even though only one of them had been investigated before, six years prior. *Id.* at 308. *Second*, both candidates had received letters

warning them that the state was conducting a preliminary investigation. *Id.* It did not matter, the Court reasoned, that the warning letters were not based on probable cause: "Rather, what matters for this second factor is whether plaintiffs have pointed to 'enforcement warning letters' addressing 'their specific conduct.'" *Id.* (quoting *McKay*, 823 F.3d at 869). *Third*, enforcement was made easier by "a provision authorizing any member of the public to file complaints"—including a candidate's "'political opponents' with incentives to file 'frivolous complaints.'" *Id.* at 308–09 (quoting *SBA List*, 573 U.S. at 164). Because anyone could file a complaint without satisfying a probable-cause requirement, this Court concluded that "the citizen-enforcement provision has *more* teeth." *Id.* at 309. *Fourth*, the commission refused to disavow enforcement against the candidates. *Id.* "Therefore, all four factors support that there is a credible threat of enforcement." *Id.*

But a plaintiff need not check all four boxes. Take the plaintiff in *Kareem*, for example. She was able to challenge a law prohibiting voters from posting photos of their ballots with a lesser showing of harm. *See* 95 F.4th at 1023. According to the Court, Kareem's subjective fear of a law that "clearly prohibited" her conduct, plus at least one instance of past enforcement, was "sufficient to establish an injury in fact under the First Amendment." *Id.* at 1025–26. That was true even though the lone instance of past enforcement didn't result in a prosecution because the target acquiesced to the government's directive and deleted the picture of their ballot. *Id.* at 1026. As the Court explained, the threat of initiating proceedings is enough—even if the threat never materializes—

because fear of legal process "itself is chilling." *Id.* (citation omitted). Moreover, the government had "publicly *doubled down* on the ballot prohibitions." *Id.* at 1024. Its refusal to disavow the rule, the Court reasoned, would lead a voter to "reasonably assume" that the State thought that photos of ballots must be removed. *Id.* at 1026. Finally, the Court emphasized that the severity of the penalties for posting ballot photos "contribute[d] to the credibility of Kareem's fear" because criminal penalties for such a minor exercise of expression would frighten most people from engaging in the proscribed activity. *Id.* at 1026–27.

And then there's *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019). A free-speech organization challenged the University of Michigan's "Bias Response Team," which investigated harassment and bullying—two terms that Speech First alleged were overly broad. *Id.* at 761–63. Even though the Response Team had no enforcement power, it could make referrals to the university or the police. *Id.* at 765. And although the referral was not punitive, this Court explained that a referral still "objectively chill[ed] speech" because it "subject[ed] students to processes which could *lead* to [] punishments." *Id.* Moreover, this Court held that the mere power to invite students to a discussion that *could* end in a referral that *could* lead to punishments was enough to create injury in fact. *Id.*

The Court also held that Speech First could challenge the anti-harassment and anti-bullying provisions as overbroad. *Id.* at 766. It did not matter that no student had ever faced discipline for having the type of "intellectual debate" that Speech First sought to protect because "[t]he lack of discipline against students

could just as well indicate that speech has already been chilled." *Id.* Plus, there had been 16 discipline cases over a two-year span. *Id.* That was enough to give Speech First standing. *Id.*

If Speech First, Kareem, and Fischer had standing, so does Mr. Horwitz. Mr. Horwitz has already faced an enforcement action for the exact conduct in which he would like to engage again. And the Middle District directed an explicit warning at that "specific conduct." *Fischer*, 52 F.4th at 308 (citing *McKay*, 823 F.3d at 869). As a result, Mr. Horwitz now "understandably fear[s]" further enforcement—especially given that the Judicial Defendants "have not only failed to disavow enforcement" but "have also publicly *doubled down*." *Kareem*, 95 F.4th at 1024. By allowing opposing parties to file complaints any time they don't like something an attorney said, Rule 83.04(a)(2) further chills Mr. Horwitz's speech. *See Fischer*, 52 F.4th at 308–09. The threat of referral to "processes which could *lead* to punishments" is an injury in fact. *See Speech First*, 939 F.3d at 765.

\* \* \*

Since July 2022, Mr. Horwitz has endured an ongoing, concrete, and irreparable injury to his First Amendment rights. Anytime he wants to talk to the media about his cases, he has to stop himself. He's turned down dozens of requests to comment on his cases, withheld hundreds of social-media posts, stopped issuing press releases in his cases, and turned down an interview on national television. He must take these precautions, at the expense of his right to free speech, because CoreCivic can ask the Judicial Defendants to enforce their

unconstitutional rule anytime Mr. Horwitz says anything "offensive." TRO Br., R.33, PageID # 255. The court told him he shouldn't publicize his cases or act like an investigative reporter, and that he risks contempt if he does again. That constant threat hanging over Mr. Horwitz's head is a constitutional injury that this Court can remedy. It does not matter that it's been over two years since the last enforcement action. *See Fischer*, 52 F.4th at 308 (six years). The lack of a second enforcement action since Mr. Horwitz began to self-censor merely "indicate[s] that [his] speech has already been chilled." *Speech First*, 939 F.3d at 766. Mr. Horwitz does not need to expose himself to the risk of an enforcement action, *id.* at 765, nor "confess that he will in fact violate that law," *SBA List*, 573 U.S. at 163. He has standing to challenge the rule that currently restricts his speech.

## II.   This Court Should Enjoin Rule 83.04's Unconstitutional Features to Finally Allow Mr. Horwitz to Speak Freely

Mr. Horwitz has been suffering a protracted, irreparable injury to his First Amendment rights while he's been litigating those rights in the court below. In that time, he has abstained from sending press releases, turned down interviews, abstained from publishing hundreds of posts on his social-media accounts, and even turned down a chance to discuss his cases on national television. He has remained silent for almost three years. He has a case right now that he could be talking about, but he cannot do so because of the threat of further enforcement. That irreparable harm increases every day that Rule 83.04(a)(2) remains in

place. This Court should reverse the district court's denial of a preliminary injunction with instructions to enter an injunction promptly on remand.

Rather than resolving only the threshold standing issue, this Court should review the denial of a preliminary injunction as well. The district court has had years to rule on one of Mr. Horwitz's motions, but it has declined to do so even though it knew Mr. Horwitz was self-censoring. Sending this case back down without fully resolving Mr. Horwitz's entitlement to injunctive relief would ensure that he suffers further irreparable harm while those issues are unnecessarily litigated in the district court yet again.

## A. This Court Is Empowered to Enjoin Restrictions on Free Speech

Mr. Horwitz moved for a preliminary injunction twice in the court below so that he could talk about his cases, with a specific (and still pending) request to talk about his cases with a national news network. PI, R.21; TRO & Renewed PI, R.30. The district court denied the motions as moot, R.38, entitling Mr. Horwitz to an immediate appeal of that denial. *See* 28 U.S.C. § 1292(a)(1).

Review of the denial of a preliminary injunction in a First Amendment case is *de novo*. *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012). That's because "only one question generally matters to the outcome" in First Amendment cases: "Have the plaintiffs shown a likelihood of success on the merits of their First Amendment claim?" *Fischer*, 52 F.4th at 307. "This is so because ... the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the [rule]." *Bays*, 668 F.3d at 819.

Since the inquiry collapses into one purely legal question, this Court can conclude, in the first instance, that every factor "weigh[s] in the plaintiffs' favor and counsel for the granting of the preliminary injunction." *Id.* at 825

The district court had six opportunities over nearly three years to disavow its unconstitutional rule. A First Amendment injury "for even minimal periods of time" is irreparable. *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 408 (6th Cir. 2022). When a rule is irreparably injuring a plaintiff's First Amendment rights, this Court can instruct the trial court to grant a preliminary injunction on remand. *Bays*, 668 F.3d at 825. Mr. Horwitz is likely to win on the merits of his claims and is suffering an irreparably injury each day he awaits an injunction. He should not have to go through another round of briefing in the district court before he can go on television and make political statements about a party that he sues regularly.

### B. Mr. Horwitz Is Likely to Succeed on the Merits

Mr. Horwitz's entitlement to a preliminary injunction turns on the familiar four-factor test. A plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "In First Amendment cases, however, the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits" because "the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the state action." *Bays*, 668 F.3d at 819 (cleaned up).

The burden of proof is also different in First Amendment cases. Although Mr. Horwitz bears the ultimate burden of showing an injunction should issue, the government must show that its speech restriction can survive strict scrutiny. *Ashcroft v. ACLU*, 542 U.S. 656, 660 (2004). It cannot do so. Because Mr. Horwitz is likely to succeed in his First Amendment claim, the district court should have preliminarily enjoined the rule.

### 1. Rule 83.04 Is Subject To & Fails Strict Scrutiny

The right to speak critically of the government and those who carry out its functions is fundamental. *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964). That fundamental right extends to attorneys, *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 634 (1995), particularly when the cases they discuss involve issues "of great public importance." *Wood v. Georgia*, 370 U.S. 375, 388 (1962). Mr. Horwitz's public-interest cases against the government and its prison contractor[4] involves "matters of utmost public concern." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838–39 (1978). Safeguarding his right to discuss these cases vindicates not just his right to speak but also the "reciprocal" rights of everyone who wants to listen. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57 (1976).

That's why courts must apply a "broad conception" of the First Amendment, "to supply the public need for information and education with respect to the significant issues of the times." *Wood*, 370 U.S. at 388. Courts

---

[4] *See Friedmann v. Corr. Corp. of Am.*, 310 S.W.3d 366, 375 (Tenn. Ct. App. 2009) (operating a prison is governmental conduct).

protect the free flow of information by applying "strict" or "rigorous scrutiny" to laws restricting speech—particularly those that burden political speech or that impose content- or speaker-based restrictions. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565–66 (2011); *Citizens United v. FEC*, 558 U.S. 310, 340 (2010); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).

Strict scrutiny applies here for several reasons: Rule 83.04 applies based on a speaker's identity and the content of their speech, and it restricts discussion of the important political issues at stake in Mr. Horwitz's lawsuits. *Sorrell*, 564 U.S. at 565–66; *Citizens United*, 558 U.S. at 340; *Playboy*, 529 U.S. at 813; *cf. Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444 (2015) (strict scrutiny for restrictions on judges' speech). Specifically, Rule 83.04(a)(2) restricts broad categories of things that Mr. Horwitz can say as he advocates for reform in Tennessee's privately run prisons, and it does so *solely* because he's an attorney (rather than a witness or party) in a case implicating that issue.

Strict scrutiny is "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997). A rule restricting speech "must be couched in the narrowest terms that will accomplish the pin-point objective permitted by the constitutional mandate and the essential needs of the public order." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968). There must be both a compelling interest and narrow tailoring. *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). The government cannot employ "means that broadly stifle fundamental personal liberties when

the end can be more narrowly achieved."[5] *Shelton v. Tucker*, 364 U.S. 479, 488 (1960).

The same scrutiny applies when courts restrict speech about judicial proceedings. Although courts must protect the fairness of proceedings, they must still err on the side of free speech. *Pennekamp*, 328 U.S. at 347. Speech restrictions require a strict showing that the speech threatens the administration of justice. *Craig v. Harney*, 331 U.S. 367, 373 (1947).

The Supreme Court decision in *Gentile v. State Bar of Nevada* confirms this point. 501 U.S. 1030 (1991). The Court held that restrictions on an attorney's out-of-court speech must satisfy strict scrutiny by requiring evidence that the specific speech at issue "will have a substantial likelihood of materially prejudicing an adjudicative proceeding." *Id.* at 1033, 1060 (cleaned up). *Gentile* concerned the speech of a criminal-defense attorney[6] who faced sanctions

---

[5] Even under intermediate scrutiny, the government cannot, out of convenience, use broad speech restrictions that substantially restrict speech beyond its significant interests. *McCullen v. Coakley*, 573 U.S. 464, 478–79, 486 (2014).

[6] Restrictions on attorney speech are even harder to justify in civil cases, given the "greater insularity against the possibility of interference with fairness in criminal cases"; the "more prolonged" nature of civil cases; and the fact that "many important social issues [are] entangled to some degree in civil litigation." *Chi. Council of Laws. v. Bauer*, 522 F.2d 242, 257–58 (7th Cir. 1975); *see also Hirschkop v. Snead,* 594 F.2d 356, 373 (4th Cir. 1979) (en banc) (rule restricting attorney speech was "invalid" and "overbroad" only as applied to civil trials); American Bar Association, Model Rule 3.6 (Trial Publicity), cmt. 6 ("Criminal jury trials will be most sensitive to extrajudicial speech. Civil trials may be less sensitive. Non-jury hearings and arbitration proceedings may be even less affected.").

because, six months before a highly publicized trial, he held a press conference to declare his client's innocence and to say that the evidence would establish that a detective took the drugs and money that the defendant stood accused of taking. *Id.* at 1063.

The Court's review in *Gentile* produced a fractured decision, with Justice O'Connor joining parts of two separate opinions, each on behalf of four other Justices. *Id.* at 1032. Justice Kennedy announced the Court's first holding: Gentile's discipline was unconstitutional because the Nevada Bar rule was unconstitutionally vague. *Id.* at 1048. Vague regulations of speech, the Court explained, tend to suppress free expression "when either the speaker or the message is critical of those who enforce the law." *Id.* at 1051.

The Court went on to hold, in an opinion by Chief Justice Rehnquist, that attorneys can face discipline for out-of-court statements only if their public comments are substantially likely to materially prejudice a trial. The Court acknowledged that discussing evidence that "might never be admitted at trial" could threaten judicial proceedings, but it cautioned that "the criminal justice system exists in a larger context of a government ultimately of the people, who wish to be informed about happenings in the criminal justice system, and, if sufficiently informed about those happenings, might wish to make changes in the system." *Id.* at 1070. To balance these interests, the Court concluded that "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard" than the traditional clear-and-present-danger test. *Id.* at 1074. Applying those principles, the Court determined that Nevada's

rule was not unconstitutional on its face because it required a "substantial likelihood of material prejudice" in order to restrict attorney speech, which would satisfy strict scrutiny because any such finding would be "narrowly tailored" to "the substantial state interest in preventing prejudice to an adjudicative proceeding[.]" *Id.* at 1075–76.

Although *Gentile* set the general standard for attorneys' out-of-court speech, the Court's void-for-vagueness ruling left two issues unresolved. *First*, the Court did not consider the constitutionality of the aspect of the Nevada Bar rule that said certain categories of speech were "ordinarily likely" to be prejudicial. *Id.* at 1058 n.3 (opinion of Kennedy, J.); *see also id.* at 1076–81 (Rehnquist, C.J., dissenting) (arguing that the provision did not create presumptions but merely helped attorneys identify what statements might be problematic). *Second*, the Court did not consider whether the application of the rule to Gentile's press conference satisfied strict scrutiny.

Those two issues—the constitutionality of presuming prejudice and the application of the *Gentile* rule to specific facts—are dispositive here. As Mr. Horwitz will explain, well-established First Amendment principles make clear that he will likely prevail on each.

### a. Rule 83.04(a)(2) Is Facially Unconstitutional

Rule 83.04(a)(2) is facially unconstitutional. While subsection (a)(1) codifies *Gentile*'s "substantial likelihood of material prejudice" standard, subsection (a)(2) inverts First Amendment scrutiny by *presuming* that broad categories of attorney speech will prejudice proceedings and then burdening the

speaker to prove that their comments are non-prejudicial. These features are antithetical to free speech.

The Supreme Court has made abundantly clear—both before *Gentile* and since—that the First Amendment "*demands*" that courts presume that restrictions on speech are invalid. *Ashcroft*, 542 U.S. at 660 (emphasis added). Even when protecting the fairness of trials, courts must prioritize "borderline" speech over the possibility that it will "influence pending cases." *Pennekamp*, 328 U.S. at 347. Unless the government (or a party seeking to censor speech) can prove that a gag order is both justified and narrowly tailored, the speaker must be free to speak. *Ashcroft*, 542 U.S. at 660.

More than 65 years of precedent conclusively and repeatedly establishes this constitutional mandate. *See, e.g.*, *FEC v. Cruz*, 596 U.S. 289, 305 (2022) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 776 (2018) (same); *Citizens United*, 558 U.S. at 340 (strict scrutiny places the burden of proof on the government); *McCutcheon v. FEC*, 572 U.S. 185, 210 (2014) (plurality) (same); *United States v. Alvarez*, 567 U.S. 709, 726 (2012) (plurality) ("the Government's heavy burden"); *Playboy*, 529 U.S. at 816 (same); *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 183 (1999) ("the Government bears the burden"); *Reno v. ACLU*, 521 U.S. 844, 879 (1997) ("an especially heavy burden on the Government"); *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) ("[T]he State bears the burden"); *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S.

60, 71 n.20 (1983) ("party seeking to uphold a restriction on commercial speech carries the burden"); *Elrod v. Burns*, 427 U.S. 347, 362 (1976) ("the burden is on the government"); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969) (same); *Freedman v. Maryland*, 380 U.S. 51, 58 (1965) (burden "must rest on the censor"); *Bates v. City of Little Rock*, 361 U.S. 516, 524 (1960) (state must show compelling interest).

The burden's placement is crucial, because the line between protected speech and that which can be censored is "finely drawn." *Playboy*, 529 U.S. at 817. With such fine margins, judicial presumptions are often "decisive of the outcome." *Speiser v. Randall*, 357 U.S. 513, 525 (1958). Misassigning the burden of proof "exacts an extraordinary cost" by silencing speech that influences, expresses, and tests our convictions and beliefs. *Playboy*, 529 U.S. at 817. In practice, negative presumptions force a speaker to ask for permission anytime they want to speak—an unconstitutional prior restraint on his speech that "bear[s] a heavy presumption against its constitutional validity." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990); *cf. United States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011) (proving a negative is "inherently difficult").

Rule 83.04(a)(2) gets the First Amendment analysis exactly backward: It reverses the presumption of free speech and "unfairly shift[s] the burden of proof" to the speaker. *Speiser*, 357 U.S. at 524. The rule relieves the moving party of having to show any harm or need. Because the rule presumes certain categories of speech are unconstitutional, this Court must presume the rule is unconstitutional. *See, e.g., R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992)

("Content-based regulations are presumptively invalid."). As a result, Mr. Horwitz is likely to prevail on the merits of his facial claim.

### b. The Middle District's Application of Rule 83.04 Violates the First Amendment

In addition to the facial invalidity, Mr. Horwitz is also likely to establish that the Middle District's application of Rule 83.04 is unconstitutional. The First Amendment prohibits restrictions on attorneys' out-of-court speech unless the proponent of censorship produces real evidence that specific comments are substantially likely to materially prejudice proceedings—a standard that the Middle District does not apply. Nor does the Middle District apply the least restrictive means, as illustrated by *Newby*'s blanket gag order.

The Supreme Court has explained that strict scrutiny requires that the party seeking to censor speech "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993); *see also 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996) (plurality) (placing the burden on the government to show "not merely that its regulation will advance its interest, but also that it will do so 'to a material degree.'"). Courts must employ "careful procedural provisions, designed to assure the fullest presentation and consideration of the matter which the circumstances permit." *Carroll*, 393 U.S. at 181. And they must then impose the least restrictive form of censorship. *Playboy*, 529 U.S. at 813. The First Amendment's "tailoring requirement does not simply guard against an impermissible desire to censor," but also the

government's attempts to censor speech "for mere convenience" when silencing speech "associated with particular problems" is "the path of least resistance." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014).

A restriction like Rule 83.04 can therefore satisfy the First Amendment only if the court requires the proponent of a gag order to produce real evidence of a "specific, not general" harm, *United States v. Ford*, 830 F.2d 596, 600 (6th Cir. 1987), and that the proposed restriction "will in fact alleviate [that harm] to a material degree." *Edenfield*, 507 U.S. at 771. The Court must then narrowly tailor relief by considering "specific … less burdensome alternatives" to a gag. *See Ford*, 830 F.2d at 600.

Applying those principles to attorneys' public speech yields the following guiding principles. General complaints of bad publicity are not enough to justify a speech restriction. The proponent must show that specific public remarks about certain evidence or a witness's credibility are likely to prejudice a jury in a way that would undermine the reliability of a verdict. Then, before the court can restrict those specific remarks, the proponent must show a less-restrictive means like voir dire would not fix the problem. If a gag order is the only tool capable, the court must not gag more speech than necessary to prevent the specific risk of prejudice. For example, if the proponent shows that an attorney's remarks about a witness on the eve of trial would damage that witness's credibility, the Court must limit its relief to *those* comments—not all out-of-court speech.

This Court has applied these principles for half a century to court orders that broadly gagged attorneys and non-attorneys alike. In *CBS Inc. v. Young*, a

case over the Ohio National Guard's killing of unarmed students at Kent State, the district court entered a broad gag order prohibiting the parties, their attorneys, and their friends and relatives from discussing "in any manner whatsoever these cases with members of the news media or the public." 522 F.2d 234, 236 (6th Cir. 1975). After CBS sought a writ of mandamus to lift the gag order, this Court ruled that a gag order could not stand without "a clear showing that an exercise of those first amendment rights will interfere with the rights of the government and the defendants for a fair trial." *Id.* at 239. To limit an attorney's public speech, "the record must contain sufficient specific findings by the trial court establishing that [the parties] and their attorneys' conduct is 'a serious and imminent threat to the administration of justice.'" *Id.*

Scrutinizing the gag order, this Court held that it was vague and overbroad: "According to its literal terms, no discussions whatever about the case are permitted by the persons upon whom the ban is placed whether prejudicial or innocuous, whether subjective or objective, whether reportorial or interpretive." *Id.* at 239. The Court then looked to the specific articles that inspired the gag order and found them to be "innocuous." *Id.* at 240. Because there was not "substantial evidence" that the publicity endangered the fair administration of justice, the Court held that the gag order violated the First Amendment. *Id.* at 241–42.

A decade later, this Court considered another gag order, this time in the prosecution of Congressman Harold Ford. *Ford*, 830 F.2d 596. Again, the decision centered on the constitutional limits on the courts' authority to restrict

speech outside of the courtroom. *Id.* The Court emphasized that the First Amendment requires that "[t]rial judges, the government, the lawyers and the public must tolerate robust and at times acrimonious or even silly public debate about litigation[,]" because "courts are public institutions funded with public revenues for the purpose of resolving public disputes, and the right of publicity concerning their operations goes to the heart of their function under our system of civil liberty." *Id.* at 599. Just because public discussion of a case "may result in overall publicity that is somewhat more favorable" does not make it "an 'unfair' trial for the government." *Id.* at 600. "To the extent that publicity is a disadvantage for the government," the Court reasoned, "the government must tolerate it." *Id.*

Given the important public interests at stake in Congressman Ford's case, the Court ruled that the threat to a fair trial "must be specific, not general," to justify a gag order. *Id.* The gag order failed because "no facts were found that would suggest 'a serious and imminent threat,' and the order was neither narrowly tailored nor directed to any specific situation." *Id.* Moreover, the trial court failed to make "any specific consideration of the less burdensome alternatives of voir dire, sequestration or change of venue." *Id.*

Similarly here, as shown by the *Newby* gag order—which the Judicial Defendants have chosen repeatedly not to disavow—the Middle District's application of Rule 83.04 does not satisfy strict scrutiny as articulated in *Gentile*, *CBS*, and *Ford*. The public statements Mr. Horwitz would make about his cases against CoreCivic are as "innocuous" as those considered in *CBS*, 522 F.2d at

239.  It is not enough that his comments might lead to negative media coverage about CoreCivic.  *See Ford*, 830 F.2d at 600.

Yet because the Middle District applies Rule 83.04 so broadly, CoreCivic does not need to bother with evidence to silence Mr. Horwitz.  *See Newby*, Gag Order, R.53, PageID # 4297 (holding evidence is unnecessary because of Rule 83.04(a)(2)(A), (D)).  Given the slow pace of civil litigation and CoreCivic's propensity for settling claims that risk reaching trial, there is rarely even an impending trial that even could be prejudiced.  Mr. Horwitz's comments to the local media and his social-media posts are never likely to poison a jury pool comprised of well over 1.5 million people spread across 14 counties in the greater Nashville region, either.

The First Amendment demands more before the judiciary restricts public speech.  The district court's practice of restricting speech absent any evidence whatsoever shows that the rule's inverted burden of proof is outcome-determinative and chills speech—just as the Supreme Court warned in *Playboy*, 529 U.S. at 817, and *Speiser*, 357 U.S. at 525.

Moreover, the court's enforcement of Rule 83.04(a)(2) is not narrowly tailored.  *See Carroll*, 393 U.S. at 184 (requiring specific, less-restrictive alternatives that fit "the exact needs of the case").  Indeed, in issuing the *Newby* gag order, Magistrate Judge Frensley declared that it simply did not matter if the case was "unlikely to go to trial, and that voir dire c[ould] ensure a neutral jury in the event of a trial[.]"  *Newby*, Gag Order, R.53, PageID # 4299.  Gag orders, however, must be the last resort.  *See Neb. Press Ass'n v. Stuart*, 427 U.S. 539,

564 (1976) (the "questioning of prospective jurors … to screen out those with fixed opinions" is preferred alternative to a prior restraint); *Ford*, 830 F.2d at 598–99 (suggesting "a change of venue or the sequestration of the jury or a [] voir dire examination of the jury," rather than a gag order); *Hirschkop v. Snead*, 594 F.2d 356, 373 (4th Cir. 1979) (en banc) ("Means narrower than Rule 7-107 are available to assure confidentiality in proper cases." (citing *CBS*, 522 F.2d 234)); *Karhani v. Meijer*, 270 F. Supp. 2d 926, 933–34 (E.D. Mich. 2003) (leafleting and sporadic media coverage would not impact a jury pool so far into the future and "vigorous voir dire" could guard against prejudice).

The First Amendment ensures Mr. Horwitz is free to discuss his cases publicly unless CoreCivic produces real evidence that a restriction is necessary because specific things he said are substantially likely to materially prejudice an impending trial *and* that a gag order is necessary. Because the district court does not require this showing, Mr. Horwitz is likely to prevail on his as-applied challenge.

### 2. Rule 83.04(a)(2) Is Also Void for Vagueness

Mr. Horwitz is also likely to show that Rule 83.04(a)(2) is void for vagueness. A rule is unconstitutionally vague "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A "person of ordinary intelligence" must be able to reasonably understand exactly what a law prohibits, "so that he may act accordingly." *Id.* Otherwise, a rule's vagueness "delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and

49

discriminatory application." *Id.* at 108–09. This problem is compounded when a vague law inhibits free speech. *Id.* Uncertainty over a rule's limits inevitably causes willing speakers to "steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt*, 377 U.S. 360, 372–73 (1964) (cleaned up). That's particularly damaging when a rule is directed at a profession whose "mission" is "challeng[ing] actions of the State," like public-interest lawyers. *Gentile*, 501 U.S. at 1051.

As discussed above, vagueness doomed the Nevada Bar's rule in *Gentile*, 501 U.S. at 1048–51. The rule had a safe-harbor provision that allowed attorneys to describe the "general nature of the defense without elaboration." *Id.* at 1048 (cleaned up). Those terms were insufficiently precise, the Court ruled, because they left a lawyer guessing at the safe harbor's contours: "The right to explain the 'general' nature of the defense without 'elaboration' provides insufficient guidance because 'general' and 'elaboration' are both classic terms of degree." *Id.* at 1048–49.

Indeed, several gag rules have been struck down as impermissibly vague. *See CBS*, 522 F.2d at 239 (holding that the rule's application to "relatives, close friends and associates" was impermissibly vague because no one could be sure who exactly the order captured); *Hirschkop*, 549 F.2d at 370–71 (prohibition on statements about "other matters that are reasonably likely to interfere with a fair trial" was "so imprecise that it can be a trap for the unwary"); *Chi. Council of Laws. v. Bauer*, 522 F.2d 242, 255–56 (7th Cir. 1975) ("There is ... a serious

vagueness problem associated with the phrase 'or other matters' employed in DR 7-107(D).").

Rule 83.04 fails for the same reason. It's virtually impossible for Mr. Horwitz—a practicing First Amendment lawyer—to guess what degree of generality he must use to avoid the "[e]vidence regarding the occurrence or transaction involved" in his cases before implicating Rule 83.04(a)(2)(A). *See Gentile*, 1048–49. Surely he can quote from the complaint, a public document. But how much paraphrasing or editorializing does Rule 83.04 allow? It's unclear. Nor can Mr. Horwitz guess which specific things he wants to say about CoreCivic could go to the "character" or "credibility" of the prison corporation under subsection (a)(2)(B). How critical does speech have to be to damage a corporation's credibility? It's also virtually impossible for Mr. Horwitz to guess what would fall under Rule 83.04(a)(2)(D)'s presumption against sharing "[i]nformation that … is likely to be inadmissible as evidence." Much of what Mr. Horwitz would like to say about CoreCivic might not be admissible at trial. His opinion of CoreCivic, for instance, his description of his past cases, and how the DOJ investigation into Trousdale Turner is relevant to his cases might all be "inadmissible as evidence." But he can't be sure that the Judicial Defendants would *really* presume that every opinion he has is prejudicial.

Rule 83.04's broad and imprecise language makes Mr. Horwitz severely restrict his discussion of his clients' cases against CoreCivic. His understandable uncertainty about the rule's confines forces him to err on the side of silence. This injury is exactly what the vagueness doctrine is meant to prevent. *See Baggett*,

377 U.S. at 372–73.  Mr. Horwitz is likely to success on his vagueness challenge, too.

## CONCLUSION

This Court should reverse the district court's standing decision and remand the case with instructions to promptly enjoin Rule 83.04(a)(2)'s unconstitutional presumptions of prejudice and burden-shifting provisions.

Dated March 26, 2025                    Respectfully submitted,

/s/ Jared McClain
Jared McClain
Benjamin A. Field
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
(703) 682-9320
jmcclain@ij.org
bfield@ij.org

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(5)(A)(B) because it contains 12,999 words, as determined by Microsoft Word and excluding items made exempt by Rule 32(g).

This brief complies with the font-style requirements of Rule 32(a)(5)–(6) because it was prepared in a proportionally spaced typeface (Charter) and 14-point font.

  /s/ Jared McClain    
Jared McClain

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2025, Appellant's Brief was served through the Court's CM/ECF system on counsel for all parties required to be served.

 /s/ Jared McClain
Jared McClain

# ADDENDUM
## DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

| RE | Document Description | Page ID |
|---|---|---|
| R.1 | Complaint | 1–36 |
| R.21 | Plaintiff's Motion for Preliminary Injunction | 117–119 |
| R.21-1 | Memorandum in Support of Plaintiff Daniel Horwitz's Motion for Preliminary Injunction | 120–146 |
| R.21-2 | Declaration of Daniel A. Horwitz in Support of Motion for Preliminary Injunction | 149–50 |
| R.30 | Plaintiff's Motion for a Temporary Restraining Order & Renewed Motion for Preliminary Injunction | 177–178 |
| R.30-1 | Plaintiff's Memorandum of Law in Support of a Temporary Restraining Order & Renewed Motion for Preliminary Injunction | 179–188 |
| R.30-2 | Declaration of Daniel A. Horwitz in Support of Motion for Temporary Restraining Order & Renewed Motion for Preliminary Injunction | 189–191 |
| R.30-4 | CBS News Interview Request | 195 |
| R.30-5 | Examples of Trial-Publicity Rules | 197-215 |
| R.33 | Response in Opposition to Plaintiff's Motion for Temporary Restraining Order and Renewed Motion for Preliminary Injunction | 245–259 |
| R.38 | Memorandum Opinion and Order | 291–300 |
| R.39 | Entry of Judgment | 301 |
| R.40 | Plaintiff's Notice of Appeal | 302 |

**Record Excerpts from *Newby v. CoreCivic of Tenn., LLC*, No. 22-cv-0093:**

| RE | Document Description | Page ID |
|---|---|---|
| R.46 | Motion to Enforce Rule 83.04 | 4164-4181 |
| R.53 | Order | 4293–4301 |

Record Excerpts from *Gordon v. CoreCivic of Tenn., LLC,* No. 23-cv-1195:

| RE | Document Description | Page ID |
|----|----------------------|---------|
| R.40 | Order | 417–418 |