# United States Court of Appeals
# for the Sixth Circuit

Daniel A. Horwitz,

*Plaintiff-Appellant,*

v.

U.S. District Court for the Middle District of Tennessee, *et al.*,

*Defendants-Appellees.*

On appeal from the United States District Court
for the Middle District of Tennessee, No. 3:24-cv-1180

## BRIEF OF *AMICUS CURIAE*
## FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION

Ronald G. London*
Joshua A. House
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Avenue, SE
Suite 340
Washington, DC 20003
(215) 717-3473
ronnie.london@thefire.org

*Counsel of Record*

*Attorneys for* Amicus Curiae

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 25-5036            Case Name: Horwitz v. U.S. District Court, et al.

Name of counsel:  Ronald G. London, Foundation for Individual Rights and Expression

Pursuant to 6th Cir. R. 26.1, Foundation for Individual Rights and Expression
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

### CERTIFICATE OF SERVICE

I certify that on _____ April 2, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Ronald G. London

_____

_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................. i

TABLE OF AUTHORITIES .................................................................. iii

INTEREST OF *AMICUS CURIAE* .......................................................... 1

SUMMARY OF ARGUMENT................................................................... 2

ARGUMENT......................................................................................... 4

    I.    Horwitz has standing to bring this classic pre-enforcement challenge to a prior restraint............................ 4

        A.    Justiciable First Amendment challenges often involve pre-enforcement challenges, as demonstrated by *amicus*'s own cases. ......................... 5

        B.    Horwitz has standing to challenge Rule 83.04. ............................................................. 10

    II.    Rule 83.04 Violates Americans' Right to Speak About Pending Cases. ........................................... 15

CONCLUSION ..................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Ariz. Right to Life PAC v. Bayless,*
    320 F.3d 1002 (9th Cir. 2003) .............................................................. 12

*Bantam Books, Inc. v. Sullivan,*
    372 U.S. 58 (1963) ............................................................................. 10

*Boone Cnty. Republican Party Exec. Comm. v. Wallace*, No. 24-5783, ___
    F.4th ___, 2025 WL 842088 (6th Cir. Mar. 18, 2025) .......................... 13

*Bridges v. California,*
    314 U.S. 252 (1941) ...................................................................... 16, 17

*Brown v. Ent. Merchs. Ass'n,*
    564 U.S. 786 (2011) ............................................................................. 4

*Bryant v. Woodall,*
    1 F.4th 280 (4th Cir. 2021) ................................................................. 12

*Chiles v. Salazar,*
    116 F.4th 1178 (10th Cir. 2024) .......................................................... 14

*Citizens United v. FEC,*
    558 U.S. 310 (2010) ............................................................................. 4

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ........................................................................... 11

*Ctr. for Individual Freedom v. Carmouche,*
    449 F.3d 655 (5th Cir. 2006) .............................................................. 11

*First Amendment Coal. v. Chiu,*
    No. 3:24-cv-08343 (N.D. Cal., filed Nov. 22, 2024) ............................... 8

*Gentile v. State Bar of Nevada,*
    501 U.S. 1030 (1991) .......................................................................... 17

*Hogarth v. Bell,*
    No. 5:24-cv-00481 (E.D.N.C., filed Aug. 22, 2024)................................ 9

*Holder v. Humanitarian Law Project,*
   561 U.S. 1 (2010) ................................................................. 6, 7

*Horwitz v. U.S. Dist. Ct.,*
   No. 3:24-CV-1180, 2025 WL 90108 (M.D. Tenn. Jan. 14, 2025) .......... 7

*Kenny v. Wilson,*
   885 F.3d 280 (4th Cir. 2018) ................................................. 13

*Laird v. Tatum,*
   408 U.S. 1 (1972) ................................................................. 4

*Majors v. Abell,*
   317 F.3d 719 (7th Cir. 2003) ................................................. 11

*McCauley v. Univ. of the V.I.,*
   618 F.3d 232 (3d Cir. 2010) ................................................. 11

*McKay v. Federspiel,*
   823 F.3d 862 (2016) ............................................................. 13

*N.C. Right to Life, Inc. v. Bartlett,*
   168 F.3d 705 (4th Cir. 1999) ................................................. 11

*N.H. Right to Life PAC v. Gardner,*
   99 F.3d 8 (1st Cir. 1996) ...................................................... 11

*N.R.A. v. Vullo,*
   602 U.S. 175 (2024) ............................................................. 11

*NAACP v. Button,*
   371 U.S. 415 (1963) ............................................................. 17

*Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey,*
   80 F.4th 215 (3d Cir. 2023) ................................................. 14

*Near v. Minnesota,*
   283 U.S. 697 (1931) ............................................................. 4

*Pernell v. Fla. Bd. of Governors of State Univ. Sys.,*
   641 F. Supp. 3d 1218 (N.D. Fla. 2022) ................................... 10

iv

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) .............................................................. 16

*Speech First, Inc. v. Cartwright,*
    32 F.4th 1110 (11th Cir. 2022) .......................................... 10

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) .............................................. 11

*Students Engaged in Advancing Tex. v. Paxton,*
    No. 1:24-CV-945-RP, 2025 WL 455463 (W.D. Tex. Feb. 7, 2025) ... 9, 10

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ......................................... 10, 11, 13, 15

*Tingley v. Ferguson,*
    47 F.4th 1055 (9th Cir. 2022) ........................................... 14

*United States v. Playboy Ent. Grp.,*
    529 U.S. 803 (2000) ...................................................... 17, 18

*Virginia v. American Booksellers Ass'n,*
    484 U.S. 383 (1988) ............................................... 5, 6, 10, 12

## Rules

M.D. Tenn. LR 83.04 .......................................................*passim*

## Other Authorities

*FIRE releases statement on free speech and social media,* FIRE (January
    9, 2023), https://perma.cc/WL5Y-UZAM ............................. 19

*New York flouts court order by demanding social media platforms
    censor users over Israel-Hamas war,* FIRE (October 19, 2023), https://
    perma.cc/G8J8-DWTS ...................................................... 19

*VICTORY: FIRE lawsuit leads California to halt law penalizing
    reporters, advocates, and victims who discuss publicly known
    information about sealed arrest records,* FIRE (Dec. 19, 2024), https://
    perma.cc/C8EN-LRK3 ........................................................ 8

# INTEREST OF *AMICUS CURIAE*[1]

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan nonprofit that defends the individual rights of all Americans to free speech and free thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended First Amendment rights on college campuses nationwide through public advocacy, targeted litigation, and *amicus curiae* filings in cases that implicate expressive rights. *See, e.g.*, *Amicus Curiae* Br. FIRE Supp. Pl.-Appellant, *Parents Defending Educ. v. Olentangy Local Sch. Dist. Bd. of Educ.*, No. 23-3630 (6th Cir., filed Dec. 23, 2024); Br. FIRE *Amicus Curiae* Supp. Pl.-Appellant, *Cunningham v. Blackwell*, 41 F.4th 530 (6th Cir. 2022); Br. FIRE *Amicus Curiae* Supp. Neither Affirmance Nor Reversal, *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021). In June 2022, FIRE expanded its advocacy beyond the university setting and now defends First Amendment rights both on campus and in society at large. FIRE represents plaintiffs, without regard to the speakers' political views, in lawsuits across the United

---

[1] No counsel for a party authored this brief in whole or in part. Further, no person, other than *amicus*, its members, or its counsel contributed money intended to fund preparing or submitting this brief. All parties consented to the filing of this brief.

States to vindicate their First Amendment rights. FIRE therefore has an interest in ensuring that Americans can sue to enjoin unconstitutional prior restraints on speech even before the government decides to prosecute.

## SUMMARY OF ARGUMENT

Plaintiff-Appellant Daniel Horwitz is an attorney who wants to do what *amicus* FIRE does every day: talk about pending litigation. But the Middle District of Tennessee's Local Rule 83.04 does not let him do that. So Horwitz did what civil-rights plaintiffs do every day: He challenged the Rule in court.

Horwitz's challenge is a routine pre-enforcement suit, seeking to enjoin the Rule's enforcement because it violates the First Amendment. The district court therefore erred by dismissing Horwitz's suit on standing grounds. Settled law firmly establishes that Horwitz doesn't need to wait for the Rule to be enforced before he asserts his right to speak about pending litigation.

Horwitz is also right that Local Rule 83.04 is a content-based prior restraint on speech. It prohibits him from talking about broad topics related to his cases. He can't talk about things in evidence; he can't talk

about things that can't be evidence. M.D. Tenn. LR 83.04(a)(2)(A), (D). If he *does* talk, the burden is on him "to show that the comment did not pose … a threat" of being "more likely than not to have a material prejudicial effect on a proceeding." *Id.* 83.04(a)(2). Violating Local Rule 83.04 results in a court order threatening sanctions. That's what happened the last time Horwitz did so. Compl. (R.1) ¶ 96.

Yet—despite the Rule having already been enforced against him—the district court held Horwitz lacks standing to challenge it because his injury is "speculative." That was wrong. In support of reversal, this *amicus curiae* brief makes two points.

First, Horwitz's suit is no different than many run-of-the-mill First Amendment cases, including those that *amicus* FIRE regularly brings. Under all of the factors used by the Supreme Court of the United States and the Circuit Courts of Appeals, including this Court, Horwitz has standing to bring a pre-enforcement challenge. The district court's ruling should be reversed.

Second, Horwitz is right on the merits. Americans have a longstanding right to speak about pending legal proceedings. When restrictions on that speech are permitted, it's because they are narrowly

tailored to further a compelling interest. Local Rule 83.04 lacks any such tailoring, presumptively banning lawyers' speech and placing the burden on them to prove their speech is permissible. Under the allegations in Horwitz's complaint, Local Rule 83.04 violates the First Amendment.

## ARGUMENT

### I. Horwitz has standing to bring this classic pre-enforcement challenge to a prior restraint.

The district court erred by overlooking how First Amendment law developed through cases just like Horwitz's: pre-enforcement challenges to prior restraints. Nearly a century ago, the Supreme Court declared the "chief purpose" of the First Amendment is to "to prevent previous restraints upon publication." *Near v. Minnesota*, 283 U.S. 697, 713 (1931). It's not just that prior restraints may ban certain speech; "constitutional violations may [also] arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). Pre-enforcement challenges therefore became a critical way to vindicate First Amendment rights, including in landmark cases. *See, e.g.*, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 789–90 (2011); *Citizens United v. FEC*, 558 U.S. 310, 321 (2010).

This case is a direct descendant of those cases. First Amendment lawsuits are very often pre-enforcement challenges. *Amicus* FIRE's own docket is a testament to that. And courts adjudicating those cases regularly hold plaintiffs have standing. That line of precedent—indeed, this Court's own precedent—confirms Horwitz has sufficiently alleged standing, contrary to what the district court held.

## A. Justiciable First Amendment challenges often involve pre-enforcement challenges, as demonstrated by *amicus*'s own cases.

Horwitz's pre-enforcement claims are in line with longstanding civil-rights precedent. The district court held that Horwitz did not allege a "here-and-now" injury. But prior restraints on speech create precisely that: here-and-now injuries. Prior restraints tell Americans: "Don't you dare say that, or else." In response, Americans sue, and rightfully so. That's why so many landmark free-speech cases were pre-enforcement challenges.

In *Virginia v. American Booksellers Ass'n*, for instance, two booksellers challenged a Virginia obscenity law that they alleged prohibited them from displaying an array of books: "classic literature, health texts, poetry, photography, and pot-boiler novels." 484 U.S. 383,

391 (1988). The "newly enacted law" had not yet been enforced. *Id.* at 393.

Yet the Supreme Court said it was "not troubled by the pre-enforcement

nature of the suit," noting in particular that "the alleged danger of this

statute is, in large measure, one of self-censorship; a harm that can be

realized even without an actual prosecution." *Id.* at 393.

Likewise, *Holder v. Humanitarian Law Project* concerned a new

statute that banned providing monetary support, legal training, or

political advocacy to foreign political organizations. 561 U.S. 1, 10 (2010).

Plaintiffs alleged they would provide that support once again if the

prohibition were lifted, but they had not yet been prosecuted for violating

it. *Id.* at 15–16. Still, there were others who *had* been charged under the

statute, and the Supreme Court held plaintiffs had a reasonable fear of

prosecution to establish standing. *Id.* at 16.

Or take *Nebraska Press Ass'n v. Stuart*, which is particularly

analogous to this case. There, the Supreme Court invalidated restrictive

orders prohibiting reporting on "any testimony given or evidence

adduced" in a particular court proceeding. 427 U.S. 539, 542 (1976). The

petitioners, like Horwitz here, were subject to previous enforcement

actions, but there was no restrictive order in place at the time of the

Supreme Court's decision. *Id.* at 547. Nevertheless, the Court held the case justiciable, as the state supreme court had "authorized state prosecutors to seek restrictive orders in appropriate cases." *Id.* at 546–47 (rejecting mootness arguments). And there was no doubt the restrictive orders injured the plaintiffs. As the Court explained, a prior restraint, "by definition, has an immediate and irreversible sanction. If it can be said that a threat of criminal or civil sanctions after publication 'chills' speech, prior restraint 'freezes' it at least for the time." *Id.* at 559.

Each of these classic First Amendment cases involved plaintiffs not charged with violating the prior restraints they challenged. Yet they didn't need to wait until there was a "pending motion[]" or other action seeking to enforce the rule, as the district court erroneously required. *Horwitz v. U.S. Dist. Ct.*, No. 3:24-CV-1180, 2025 WL 90108, at *4 (M.D. Tenn. Jan. 14, 2025) (R. 38, PageID # 298–99). Rather, when a prior restraint creates "a credible threat of prosecution," plaintiffs "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Humanitarian L. Project*, 561 U.S. at 15 (quoting *Babbit v. Farm Workers*, 442 U.S. 289, 298 (1979)).

It's no surprise, then, that *amicus* FIRE, a First Amendment advocacy group, often represents plaintiffs bringing pre-enforcement challenges. Threat of enforcement or chill is still an injury. That it has not yet occurred does not preclude relief.

For example, just last year FIRE challenged, on behalf of the First Amendment Coalition and law professor Eugene Volokh, a California law purporting to penalize publishing information related to sealed arrest reports. That pre-enforcement challenge seeks to enjoin the government from enforcing the law where a prospective publisher lawfully receives sealed reports. Plaintiffs thus alleged—similar to Horwitz's allegations here—that they "credibly fear" enforcement because they "have published and intend to again publish the same information that drew multiple demand letters." Compl. (Doc. 1) ¶¶ 8, 78, *First Amendment Coal. v. Chiu*, No. 3:24-cv-08343 (N.D. Cal. filed Nov. 22, 2024). Within a month of filing, the government agreed to a preliminary injunction as the case proceeds.[2]

---

[2] *VICTORY: FIRE Lawsuit Leads California to Halt Law Penalizing Reporters, Advocates, and Victims Who Discuss Publicly Known Information About Sealed Arrest Records*, FIRE (Dec. 19, 2024), https://perma.cc/C8EN-LRK3.

FIRE also represents North Carolina voter Susan Hogarth in her challenge to the state's "ballot selfie" ban—a prohibition on taking personal photos in voting booths. After voting in the 2024 primaries, Hogarth received a letter from the North Carolina State Board of Elections "threatening criminal prosecution for taking and sharing her ballot selfie." Compl. (Doc. 1) ¶ 4, *Hogarth v. Bell*, No. 5:24-cv-00481 (E.D.N.C. filed Aug. 22, 2024). The letter further demanded she remove her social media post. *Id.* ¶ 130. Although Hogarth has not been formally prosecuted, the state's letter creates a credible threat of future enforcement. *Id.* ¶ 133. The federal district court has enjoined the ban's enforcement against her as the case proceeds. Order on Mot. For Inj. Relief (Doc. 60), *Hogarth*, No. 5:24-cv-00481 (Oct. 21, 2024).

FIRE's pre-enforcement challenges often succeed against assertions that its clients lack standing. In one recent decision, FIRE obtained a preliminary injunction against a Texas law regulating social media websites. Even though FIRE's clients, Students Engaged in Advancing Texas, were not "directly regulated," the court held they had standing to challenge the law because their "speech [was] prevented or chilled by it." *Students Engaged in Advancing Tex. v. Paxton*, No. 1:24-CV-945-RP,

2025 WL 455463, at *5 (W.D. Tex. Feb. 7, 2025). "This type of chilled speech or self-censorship is an injury sufficient to confer standing." *Id.* at *6 (quotation marks omitted) (citing, *inter alia*, *Am. Booksellers Ass'n*, 484 U.S. at 393); *see also Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1250 (N.D. Fla. 2022) ("[A] pre-enforcement First Amendment injury is typically realized by evidence of self-censorship, and for these injuries, 'the fundamental question is whether the challenged policy objectively chills protected expression.'" (quoting *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022)), *appeal docketed*, No. 22-13992 (11th Cir. argued June 14, 2024).

There is a "heavy presumption" that "[a]ny system of prior restraint" violates the speakers' constitutional rights. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Those speakers have standing to sue.

**B.    Horwitz has standing to challenge Rule 83.04.**

Plaintiffs like Horwitz have standing to bring pre-enforcement challenges so long as they allege their "intended speech is arguably proscribed by the law." *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 162 (2014) (quotation marks omitted). Plaintiffs in the

above cases had standing to proceed because they established "a credible threat of enforcement" against their speech. *Id.* at 161. Showing they were threatened did not require them to "confess that [they] will in fact violate [the] law." *Id.* at 163. That's because threats of enforcement are enough to silence a speaker, creating constitutional injury. *See N.R.A. v. Vullo*, 602 U.S. 175, 189 (2024).

A threat of enforcement must be reasonable or objective, not "speculative" or "subjective." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416, 418 (2013). But that standard is not difficult to meet, certainly not in cases involving prior restraints on speech.

In fact, the First, Third, Fourth, Fifth, Seventh, and Ninth Circuits "will *assume* a credible threat of prosecution" in cases challenging "statutes that facially restrict expressive activity by the class to which the plaintiff belongs," provided the statutes are "non-moribund" and there is no compelling evidence of non-prosecution. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020) (emphasis added) (citing *N.H. Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996); *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 237–39 (3d Cir. 2010); *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999); *Ctr. for Individual*

*Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003); *Ariz. Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006–07 (9th Cir. 2003)). "This is because a court presumes that a legislature enacts a statute with the intent that it be enforced." *Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021); *see also Am. Booksellers Ass'n*, 484 U.S. at 393 ("The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise.").

Here, Horwitz challenges Rule 83.04 on its face. Compl. (R.1) ¶¶ 134–44. There's no question that Horwitz—as an attorney frequently litigating in the Middle District—is subject to the Rule. *Id.* ¶¶ 10, 20, 39. And there's no suggestion the court will not enforce it against him. Indeed, the court has already done so in another case, ordering him "to refrain from extrajudicial statements regarding this matter and to delete those over which he has control." *Id.* ¶ 48. Horwitz has therefore established a credible threat of prosecution were he to violate the rule.

Even were Rule 83.04 not self-evidently a threat to Horwitz's speech (which it is), the district court should at minimum have applied

this Court's four-factor test for determining whether there is a credible threat of enforcement:

> (1) Have the defendants previously enforced the challenged provision against the plaintiffs or others?
> (2) Have the defendants sent warning letters to the plaintiffs?
> (3) Do aspects of the regulatory regime make enforcement easier or more likely, such as provision allowing citizens to file complaints? and
> (4) Have the defendants refused to disavow enforcement of the challenged provision against the plaintiffs?

*Boone Cnty. Republican Party Exec. Comm. v. Wallace*, No. 24-5783, ___ F.4th ___, 2025 WL 842088, at *6 (6th Cir. Mar. 18, 2025). These factors, established in *McKay v. Federspiel*, are not exhaustive so long as "some combination" of them are present. 823 F.3d 862, 869 (6th Cir. 2016). They also track the factors used in sister Circuits.

The Fourth Circuit considers "[p]ast enforcement against the same conduct [as] good evidence" and has held "threat of prosecution is especially credible when defendants have not 'disavowed enforcement.'" *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (quoting *SBA List*, 573 U.S. at 165). The Ninth Circuit considers "(1) whether the plaintiff has a concrete plan to violate the law, (2) whether the enforcement authorities have communicated a specific warning or threat to initiate proceedings, and (3) whether there is a history of past prosecution or enforcement."

*Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (quotation marks omitted).[3] And the Tenth Circuit not only provides similar factors but also singles out private-enforcement regimes: "(1) whether the plaintiff showed past enforcement against the same conduct; (2) whether authority to initiate charges was not limited to a prosecutor or an agency and, instead, any person could file a complaint against the plaintiffs; and (3) whether the state disavowed future enforcement." *Chiles v. Salazar*, 116 F.4th 1178, 1198 (10th Cir. 2024), *cert. granted*, No. 24-539, 2025 WL 746313 (U.S. March 10, 2025). On the threat of private enforcement, the Third Circuit concurs: "[T]he risk of enforcement is greater when private parties can enforce the law." *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 221 (3d Cir. 2023).

As Horwitz's opening brief explains, his complaint easily establishes a credible threat of enforcement, under both this Court's standards and those of its sister circuits. *See* Appellant's Br. 26–34. First, Defendants have previously enforced Rule 83.04 against him, ordering him not only to refrain from talking about a case but also to "delete those

---

[3] The Ninth Circuit will also "interpret[] the government's failure to *disavow* enforcement of the law as weighing in favor of standing." *Tingley*, 47 F.4th at 1068.

[statements] over which he has control." Compl. (R.1) ¶ 48. Second, Horwitz was warned that "he'd face sanctions if he violated the rule again." *Id.* ¶ 96. Third, Rule 83.04 permits private parties to trigger enforcement proceedings, as indeed happened to Horwitz when a party to his case filed a motion complaining that Horwitz "provided public commentary regarding … allegations that underlie this suit." *Id.* ¶¶ 31–32. And fourth, not only have Defendants not disavowed the enforcement of Rule 83.04, they have also upheld the rule when confronted by Horwitz's challenges. *See* Appellant's Br. 28–29.

Multifactorial tests aside, the constitutional brass tacks are that Horwitz's "intended speech"—remarks to media outlets requesting comment on his cases—is "arguably proscribed" by Rule 83.04. *SBA List*, 573 U.S. at 162. That's sufficient to establish standing in a First Amendment case. *Id.*

## II.     Rule 83.04 Violates Americans' Right to Speak About Pending Cases.

Horwitz not only has standing to challenge Rule 83.04, he's also right that it violates the First Amendment. As demonstrated below, the First Amendment protects Americans' right to speak about the legal

system. And *amicus* FIRE, like many other public-interest advocates, frequently does so.

Rule 83.04 is constitutionally suspect in the first instance, and thus warrants strict scrutiny, because on its face it is a content-based restraint on speech. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). It prohibits specific categories of speech based on their subject matters—including discussion of "[e]vidence regarding the occurrence or transaction involved" in the case—unless the speaker affirmatively proves the speech will not prejudice their opponent at trial. M.D. Tenn. LR 83.04(a)(2)(A). Because this requires examining "the content of the regulated speech" to determine the Rule's application, it is "presumptively unconstitutional." *Reed*, 576 U.S. at 163–64.

Rule 83.04 is constitutionally suspect for another reason: It burdens speech about the legal system. Over 80 years ago, the Supreme Court held that Americans have a right to speak about and scrutinize pending cases. *See Bridges v. California*, 314 U.S. 252, 268–71 (1941). In *Bridges*, the Supreme Court invalidated contempt convictions imposed for publishing comments on pending litigation. The Court held that the contempt proceedings chilled speech, writing that "as a practical

result … anyone who might wish to give public expression to his views on a pending case involving no matter what problem of public interest, just at the time his audience would be most receptive, would be as effectively discouraged as if a deliberate statutory scheme of censorship had been adopted." *Id.* at 269.

Freedom to speak about litigation is even more important where the case concerns public-interest litigation, as many of Horwitz's cases do. *See NAACP v. Button*, 371 U.S. 415, 429 (1963) ("[T]he First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion."). Hence courts must not "abandon[] … normal First Amendment principles in the case of speech by an attorney regarding pending cases." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1054 (1991). The "barriers to prior restraint remain high" even when—perhaps especially when—speech concerns our legal system. *Neb. Press Ass'n*, 427 U.S. at 570 (invalidating order prohibiting publication of information on pending case).

Rule 83.04 cannot withstand strict scrutiny, as required of a content-based prior restraint on speech about pending legal proceedings. "It is rare that a regulation restricting speech because of its content will

ever be permissible." *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 818 (2000). Even assuming Defendants' interest in preventing prejudice to legal proceedings is compelling, Rule 83.04 must be "narrowly tailored to promote" that objective. *Id.* at 813. But Defendants have yet to show how Rule 83.04 is narrowly tailored to any interest.

As Horwitz's brief explains, it is Defendants' burden to demonstrate that Rule 83.04 is narrowly tailored. Appellant's Br. 42–44. Defendants' response to Horwitz's TRO motion made no such attempt. In response to Horwitz's motion to expedite in this Court, however, Defendants argued they chose the precise categories of speech banned by Rule 83.04(a)(2) because those "are more likely than not to have a material prejudicial effect on a proceeding." Appellees' Resp. Opp. Mot. Expedite 25. But on examination that rationale doesn't pass muster.

Take the restriction on "[c]omment relating to … [e]vidence regarding the occurrence or transaction involved." M.D. Tenn. LR 83.04(a)(2)(A). This could pertain to nearly any part of an attorney's case. In a constitutional civil-rights case, this would restrict any comments "relating to" the challenged government policies, which are surely part of the case's evidence. For example, when New York attempted to ban

"hateful conduct" in online speech, *amicus* FIRE represented a group of Plaintiffs challenging the law under the First Amendment—and frequently commented on the law's unconstitutionality, workable alternatives to it, and New York's seeming attempt to enforce it despite an injunction against doing so.[4] Such comments opposing a policy are not likely "to have a material prejudicial effect" on a proceeding challenging it. After all, most policies faced opposition in the legislature or public square even before becoming the subject of litigation.

If restricting comment on a case's evidence weren't draconian enough, Rule 83.04 further restricts comments on things that an attorney knows are "*in*admissible as evidence." M.D. Tenn. LR 83.04(a)(2)(D) (emphasis added). So, if Horwitz comments on evidence, it's against the rule. But if he restricts his comments to things that aren't in evidence, it's also against the rule. Rule 83.04 is, ultimately, a restriction against commenting *at all*. Such a broad restriction further illustrates that Rule 83.04 isn't tailored, narrowly or otherwise, to preventing prejudice in

---

[4] *See, e.g., New York Flouts Court Order by Demanding Social Media Platforms Censor Users over Israel-Hamas War*, FIRE (October 19, 2023), https://perma.cc/G8J8-DWTS; FIRE *Releases Statement on Free Speech and Social Media*, FIRE (January 9, 2023), https://perma.cc/WL5Y-UZAM.

legal proceedings. Rather, it's a blanket prior restraint on speech about pending cases, thereby chilling free expression.

## CONCLUSION

Americans have a right to speak about pending litigation. And when that right is burdened, they have standing to sue about it. For that reason, and those above, this Court should reverse the district court's dismissal of Horwitz's lawsuit challenging Rule 83.04's censorship of his speech.

Dated: April 2, 2025

/s/ Ronald G. London
Ronald G. London*
Joshua A. House
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE
Suite 340
Washington, DC 20003
(215) 717-3473
ronnie.london@thefire.org

*Counsel of Record

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1.    This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f): this document contains 3,828 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated: April 2, 2025

/s/ Ronald G. London
Ronald G. London
FOUNDATION FOR INDIVIDUAL
RIGHTS AND EXPRESSION

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 2, 2025, an electronic copy of the Brief of *Amicus Curiae* Foundation for Individual Rights and Expression was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. The undersigned also certifies all parties in this case are represented by counsel who are registered CM/ECF users, and that service of the brief will be accomplished by the CM/ECF system.

Dated: April 2, 2025

/s/ Ronald G. London
Ronald G. London*
FOUNDATION FOR INDIVIDUAL
  RIGHTS AND EXPRESSION
700 Pennsylvania Ave., SE
Suite 340
Washington, DC 20003
(215) 717-3473
ronnie.london@thefire.org

*Counsel of Record*